## COMMONWEALTH of Pennsylvania, Appellee,

v.

## Michael A. GOMOLEKOFF, Appellant.

Superior Court of Pennsylvania.

Submitted Aug. 28, 2006.

Filed Oct. 25, 2006.

Deanna L. Heasley, Public Defender, Erie, for appellant.

Bradley H. Foulk, Asst. Dist. Atty., Erie, for Com., appellee.

BEFORE: TODD, GANTMAN, and JOHNSON, JJ.

OPINION BY TODD, J.:

¶ 1 Michael A. Gomolekoff appeals the judgment of sentence imposed by the Erie County Court of Common Pleas after he was convicted of possession of child pornography.[1] We affirm.

¶ 2 On November 19, 2003, while assigned to the Internet Crimes Against Children Task Force, Detective Jennifer Wright of the Wichita Police Department in Wichita, Kansas was posing as a 13–year–old girl named "Paige" on America Online. Detective Wright received an AOL Instant Message from "DAB-MAN40," who indicated that he had pictures of "a lot of everything," including "guy on young girl, girl on girl, guy on guy, mom with young boy and K9" and asked Paige what she would like to see. (Affidavit of Probable Cause for Criminal Complaint, 9/24/04 (Appellant's Brief, Ex-

---

1. 18 Pa.C.S.A. § 6312.

hibit E)). Through investigation, Detective Wright learned that "DABMAN40" was Randolph Winnans, Jr. of Virginia.

¶ 3 On November 21, 2003, "DABMAN40" again contacted "Paige" and sent her 36 emails containing some type of pornography, including suspected child pornography. A search warrant for the email account of Winnans, a/k/a "DABMAN40", was served on America Online, and as a result thereof, the police learned that another America Online user named "tasdevil1" had received two emails, which allegedly contained images of child pornography, from Winnans on November 21, 2003. One photo had a filename of "UNTITLED01.JPG" and the other had a file name "PRETEEN_20_PANTIES_2052." The user name "tasdevil1" was registered to Appellant, at a residence in Erie, Pennsylvania.

¶ 4 The above information was forwarded to the Internet Crimes Against Children Task Force in Delaware County, Pennsylvania, in June 2004. Based on the information, on August 4, 2004, Detective Jessica Lynn obtained a search warrant for Appellant's home. Four computer towers were seized from Appellant's home and, although 20 images containing child pornography were discovered on one of the towers, the two emails purportedly sent to Appellant by "DABMAN40", and upon which the search warrant was based, were not found.

■ ¶ 5 Prior to trial, Appellant filed a motion to suppress the images found on his computer towers on the basis that the information used to obtain the search warrant was stale. Following a hearing on March 15, 2005, the trial court denied the motion on March 17, 2005. On October 31, 2005, Appellant was convicted at a bench trial of 15 counts of possessing child pornography. Appellant was determined not to be a sexually violent predator by the Sexual Offender Assessment Board, and the trial court ultimately imposed an aggregate term of 1½ to 4 years incarceration, followed by 28 years of probation. No post-trial motion was filed, but in this timely appeal, Appellant presents the following issue for this Court's review: "Was the search warrant based upon stale information, so that the fruits of said warrant should have been suppressed?" (Appellant's Brief at 3.) Appellant further argues that the fact that the two emails on which the search warrant was based were not found renders the warrant invalid.[2]

■ ¶ 6 In reviewing a ruling by the suppression court,

we must determine whether its factual findings are supported by the record. Where the defendant challenges an adverse ruling of the suppression court, we will consider only the evidence for the prosecution and whatever evidence for the defense which is uncontradicted on the record as a whole; if there is support on the record, we are bound by the suppression court, and we may reverse that court only if the legal conclusions drawn from these facts are erroneous.

*Commonwealth v. Slonaker*, 795 A.2d 397, 400 (Pa.Super.2002) (citation omitted).

¶ 7 The United States Supreme Court defined the applicable standards for issuing and reviewing a search warrant in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983):

---

2. Appellant also suggests in his brief that it is possible that "the warrant was served after it had expired." (Appellant's Brief at 13.) As Appellant did not raise this claim in his pretrial motion to suppress, he failed to preserve the claim for appellate review. *See Commonwealth v. Lopata*, 754 A.2d 685, 689 (Pa.Super.2000) ("A claim which has not been raised before the trial court cannot be raised for the first time on appeal.").

[t]he task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed.

*Id.* at 238–39, 103 S.Ct. 2317 (citation omitted).

¶ 8 With regard to a claim that an application for a warrant contains stale information, in *United States v. Harvey*, 2 F.3d 1318 (3rd Cir.1993), a child pornography case, the Third Circuit Court of Appeals explained:

[a]ge of the information supporting a warrant application is a factor in determining probable cause. If too old, the information is stale, and probable cause may no longer exist. Age alone, however, does not determine staleness. "The determination of probable cause is not merely an exercise in counting the days or even months between the facts relied on and the issuance of the warrant." Rather, we must also examine the nature of the crime and the type of evidence.

*Id.* at 1322 (citations omitted).

■ ¶ 9 Appellant argues that, because the transmission of the two emails which formed the basis for warrant application occurred 9½ months prior to the execution of the warrant, the information supporting the warrant application was stale. We do not agree. In *Harvey,* the Federal Bureau of Investigation ("FBI") obtained a search warrant to search Harvey's residence for "visual depictions of naked chil-

dren" based on a warrant application which contained, *inter alia,* information that "ten times between April and July 1990 and three times in August 1991, Harvey received mailings from organizations that were either known to distribute or suspected of distributing child pornography." *Id.* at 1321. During the search, the FBI discovered 75 photos of naked children engaged in sexual conduct, many of which Harvey admitted taking himself; various advertisements and catalogs for child pornography; and a file of 560 index cards with detailed handwritten descriptions of Harvey's sexual activities with young boys during trips to the Philippines.

¶ 10 Despite the fact that the information cited in the warrant was alleged to have occurred between 2 and 15 months before the execution of the search warrant, the Third Circuit rejected Harvey's argument on appeal that the district court should have suppressed the evidence because the information contained in the application for the warrant was stale. In doing so, the Court noted that three of the mailings occurred only two months prior to the execution of the search warrant. Moreover, the Court, citing *United States v. Rabe*, 848 F.2d 994 (9th Cir.1988), and *United States v. Rakowski*, 714 F.Supp. 1324 (D.Vt.1987), recognized that the officer who obtained the warrant had stated that "[p]edophiles rarely, if ever, dispose of sexually explicit material." *Harvey*, 2 F.3d at 1323.

¶ 11 Similarly, in *United States v. Abraham*, 2006 WL 1344303 (W.D. Pa. filed May 17, 2006), another child pornography case, the United States District Court of the Western District of Pennsylvania rejected the defendant's claim that information contained in an affidavit of probable cause was stale, where such information was based on a single event that occurred more than four months prior to the execu-

tion of the search warrant. In doing so, the Court stated:

> [L]ooking at the nature of the crime and the type of evidence in the Affidavit of Probable Cause, we hold that the information supporting the warrant was not stale. Specifically, we find that although up to four months had passed since the Defendant had placed the alleged child pornography on the Gnutella Network, and there is only mention of one image of child pornography in the Affidavit, the information was not stale. The affiant had explained that it was his opinion, based upon his training and experience, and the opinion of an expert on pedophiles, that pedophiles tend to keep any child pornography for long periods of time. Alternatively, even if the child pornography in question had been deleted or not even downloaded by the Defendant, any trained forensic examiner could retrieve the image from Defendant's computer.

*Id.* at *2 (footnote omitted).

¶ 12 The *Abraham* Court further found the defendant's reliance on *United States v. Zimmerman,* 277 F.3d 426 (3rd Cir. 2002), wherein the court held that expert opinion contained in an affidavit that is not tailored to the specific facts of a case is insufficient to establish probable cause, and on which Appellant herein cites, to be misplaced, noting that "the *Zimmerman* court repeatedly emphasized that it was addressing a situation where adult pornography, and not child pornography, was involved." *Abraham,* at *2. Indeed, the *Zimmerman* court itself distinguished cases, including its own holding in *Harvey,* that involve child pornography:

> In conducting our staleness analysis in *Harvey,* we also pointed to the fact that pedophiles rarely, if ever, dispose of child pornography. Many courts have similarly accorded weight to that fact.

*See, e.g., United States v. Lacy,* 119 F.3d 742, 746 (9th Cir.1997); *United States v. Peden,* 891 F.2d 514, 518–19 (5th Cir. 1989). Presumably individuals will protect and retain child pornography for long periods of time because it is illegal and difficult to obtain.

*Zimmerman,* 277 F.3d at 434.

¶ 13 In the instant case, Detective Lynn stated in her Affidavit of Probable Cause in support of her application for a search warrant as follows:

> Based on this officer's past experience and training, this affiant believes that graphic image files containing child pornography can be maintained for long periods of time in a number of ways: on a computer's built in hard disk drive, on portable storage disks, on CD ROMs or on other computer media. Most often the collector maintains the files purposefully. Even when the pornographic files have been deleted (due [to] fear of discovery), computer forensic experts are nonetheless often able to recover the deleted pornographic images that had been purposefully possessed. Based on her past experience and training, this affiant believes that persons who use personal computers in their homes tend to retain their personal files and data for extended periods of time even if a person has replaced, traded in or "upgraded" to a new personal computer. This affiant believes personal computer users routinely transfer most of their data onto their new computers when making an upgrade. This data transfer is often done by saving files from the old computer to media sources (CDs or floppy disks, Zip drives, USB port device), then opening them onto the new computer and saving them to the new hard drive. Visual images, such as child pornography, are as likely as other data to be

transferred to a person's new, replacement or upgraded computer system.

(Affidavit of Probable Cause, 8/4/04, at 4.) In light of Detective Lynn's statements, and the case law discussed above, we conclude that the information on which the search warrant was based was not stale, and that the trial court, therefore, did not err in refusing to suppress the evidence seized as a result of the warrant on this basis.

¶ 14 To the extent Appellant also asserts that the search warrant was rendered invalid because the two emails on which the warrant was based were not actually found on his computer towers, as the Third Circuit Court of Appeals explained in *Harvey, supra,*

> In *Franks v. Delaware,* 438 U.S. 154[, 98 S.Ct. 2674, 57 L.Ed.2d 667] ... (1978), the Supreme Court held a defendant may attack the issuance of a warrant if based on untruthful information. *Id.* at 171[, 98 S.Ct. 2674].... In requiring a truthful basis for the issuance of a warrant, the Court explained
>
> > [t]his does not mean "truthful" in the sense that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily.
>
> *Id.* at 165[, 98 S.Ct. 2674].... To succeed in attacking a warrant, a defendant must come forward with "allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." *Id.* at 171[, 98 S.Ct. 2674].

*Harvey,* 2 F.3d at 1323 (emphasis added).

¶ 15 Although the two emails in question were not found on Appellant's computer towers, he has not offered any evidence to suggest that Detective Lynn, in asserting that Appellant had received such emails, made deliberately false statements, or made statements with a reckless disregard for the truth. Accordingly, we reject Appellant's argument that the evidence seized pursuant to the search warrant should have been suppressed on this basis.

¶ 16 For all of the foregoing reasons, we affirm Appellant's judgment of sentence.

¶ 17 Judgment of sentence **AF-FIRMED.**