J-S53027-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| TYRIEK LEON THORNTON, | |
| Appellant | No. 2087 MDA 2015 |

Appeal from the Judgment of Sentence November 5, 2015
In the Court of Common Pleas of Berks County
Criminal Division at No(s): CP-06-CR-0005515-2013

BEFORE: BOWES, SHOGAN, and FITZGERALD,[*] JJ.

MEMORANDUM BY SHOGAN, J.: **FILED SEPTEMBER 30, 2016**

Tyriek Leon Thornton ("Appellant") appeals from the judgment of sentence imposed following his convictions of persons not to possess firearms and possession of drug paraphernalia. We affirm.

On August 24, 2013, Appellant was charged with violating 18 Pa.C.S. § 6105(a)(1), persons not to possess a firearm, 18 Pa.C.S. § 3921(a), theft by unlawful taking, 18 Pa.C.S. §3922(a)(1), theft by deception, 18 Pa.C.S. §3925(a), receiving stolen property, and 35 P.S. § 780-113(a)(32), possession of drug paraphernalia. Following a preliminary hearing on November 22, 2013, the charges of theft by unlawful taking and receiving stolen property were dismissed.

---

[*] Former Justice specially assigned to the Superior Court.

On January 16, 2014, Appellant filed a motion to suppress physical evidence obtained at a residence located at 1109 North 12th Street in the city of Reading. Appellant later retained new counsel who filed a similar motion.[1] On June 10, 2014, after determining that no new issues were presented in the later-filed motion to suppress, the trial court held a hearing and, following testimony, ordered the parties to submit memoranda in support of their respective positions. On August 21, 2014, the trial court denied Appellant's motion to suppress.

Appellant's jury trial was held on November 4–5, 2015. At the conclusion of the trial, Appellant was convicted of persons not to possess firearms and possession of drug paraphernalia.[2] Appellant was sentenced on November 5, 2015 to an aggregate term of incarceration of not less than five and one half nor more than eleven years, with credit for 127 days. No post-sentence motion was filed. This appeal was filed, and both Appellant and the trial court have complied with Pa.R.A.P. 1925.

---

[1] Appellant was initially represented by the Berks County Public Defender's Office which filed the initial motion to suppress. On June 2, 2014, Appellant's privately-retained counsel filed a second suppression motion. On November 24, 2014, Appellant hired another attorney who was granted leave to withdraw on June 12, 2015. Three days later, the Berks County Public Defender's Office was re-listed as counsel of record.

[2] Upon motion by the Commonwealth, the theft by deception count was withdrawn on November 4, 2015.

Appellant raises the following issues for review which are stated verbatim:

D. Whether the trial court erred in denying Appellant's pre-trial motion to suppress all items seized in the search of 1109 North 12 Street, Reading, Pennsylvania 19604, where:

    1. The warrant should not have been issued because probable cause to search Appellant and the residence and not been established;

    2. The stop and arrest followed by a search of Appellant leading to the discovery of the evidence sought in the warrant application rendered the warrant stale and the search of the house should not have been executed as circumstances had changed;

    3. The execution of the warrant went beyond the scope of the search authorized by the warrant as there was no probable cause to search to residence and the plain view exception of the warrant requirement did not apply.

E. Whether the evidence was insufficient to support the guilty verdict of Persons not to Possess Firearms, where the Commonwealth failed to prove beyond a reasonable doubt that Appellant was in actual possession or constructive possession of the firearm seized from 1109 North 12th Street, Reading, Pennsylvania 19604.

F. Whether the evidence was insufficient to support the guilty verdict of Possession of Drug Paraphernalia, where the Commonwealth failed to prove beyond a reasonable doubt that Appellant was in actual or constructive possession of the paraphernalia seized from 1109 North 12th Street, Reading, Pennsylvania 19604.

Appellant's Brief at 5 (verbatim).

When an appellant raises both a sufficiency of the evidence issue and a suppression issue, we address the sufficiency of the evidence supporting the conviction first, and we do so without a diminished record:

> [W]e are called upon to consider all of the testimony that was presented to the jury during the trial, **without consideration as to the admissibility of that evidence**. The question of sufficiency is not assessed upon a diminished record. Where improperly admitted evidence has been allowed to be considered by the jury, its subsequent deletion does not justify a finding of insufficient evidence. The remedy in such a case is the grant of a new trial.

*Commonwealth v. Sanford*, 863 A.2d 428, 432 (Pa. 2004) (quoting *Commonwealth v. Smith*, 568 A.2d 600, 603 (Pa. 1989) (emphasis in original).

With respect to Appellant's sufficiency claim:

> [t]he standard we apply is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa. Super. 2011) (quoting

*Commonwealth v. Jones*, 874 A.2d 108, 120–121 (Pa. Super. 2005

(citations omitted)).

Appellant argues that the evidence presented at trial was insufficient

to support his convictions of persons not to possess a firearm and

possession of drug paraphernalia. The trial court summarized the evidence

probative of the possession charges as follows:

> Detective John Lackner of the Berks County District Attorney's Office was initially assigned to assist with the execution of the search warrant at 1109 North 12th Street. On his way to the location, Lackner was advised via radio that Appellant had left the residence in a red Pontiac. Lackner was assigned the task of stopping the vehicle, which occurred in the 200 block of North 10th street in the City of Reading.
>
> Appellant was sitting in the front passenger seat of the vehicle. Lackner removed Appellant from the vehicle and placed him in handcuffs. Lackner found a small amount of marijuana inside Appellant's pants pocket; the same pocket contained $1,000 of United States currency. Lackner also removed a cell phone from Appellant. The currency removed from Appellant was the same that had been provided to him in the attempt to purchase crack cocaine.
>
> Nelson Ortiz, Lieutenant of the Berks County Drug Task Force Unit, was also involved with the traffic stop and subsequent search of Appellant. Once Appellant was taken into custody, Ortiz travelled to 1109 North 12th Street to execute the search warrant. Inside the residence, there were two females and a small child; one of the women, [Latasha] Cruz, explained that it was her residence. Detective Gresh explained the search warrant to the occupants.
>
> Ortiz searched the living room; inside a closet there was a small, portable safe. The safe, which was not locked, contained a loaded pistol, two gloves, and a box with additional rounds. Gresh seized a men's North Face hooded jacket, size XXL, from

the same living room closet. The jacket contained latex gloves and unused packaging material commonly used to package controlled substances for street sales. Gresh also seized multiple documents containing Appellant's name and the address of 1109 North 12th Street. Finally, there was a picture of Appellant on the mantel in the living room and some men's clothing throughout the house.

Britton Morin is a DNA Technical Leader at NMS labs, a private forensic laboratory, in Willow Grove, Pennsylvania. Morin testified that she developed DNA profiles using the firearm, magazine, and a glove recovered from 1109 North 12th Street. DNA was analyzed from the firearm and magazine, and Appellant was excluded as a potential contributor. Appellant could not be excluded as a contributor from the DNA recovered from the inside of the glove.[3] Morin testified that wearing gloves can prevent DNA from coming in contact with an item.

[3] Morin testified with respect to the statistics of the DNA profile: "We perform a statistic when someone cannot be excluded as a major contributor, which is known as a random match probability. And that statistic determines the likelihood of this specific person having the same alleles as those of the major contributor versus a randomly selected person from the population. . . . We calculate it for—separately for three different racial groups. The statistic was 1 in 478 million U.S. Caucasians, 1 in 1,571,000 U.S. Africans, and one in 40,580,000 U.S. Hispanics."

Craig Epright, a system administrator technician at Berks County Prison, testified on the subject of the prison's phone system and its ability to record calls. The Commonwealth then introduced audio recordings of Appellant's telephone calls made from the prison within two weeks of his arrest. In the recordings, Appellant refers to 1109 North 12th Street as his house and he refers to the recovered pistol as his gun.

The Commonwealth also introduced a certified copy of conviction from Perry County, Pennsylvania indicating that Appellant was convicted on three counts of aggravated assault in March 2000.

Trial Court Opinion, 1/27/16, at 3–4 (record references omitted). The trial court then concluded that this evidence was sufficient to support the jury's guilty verdicts for the following reasons:

> The Commonwealth introduced evidence that Appellant was residing at 1109 North 12th Street. This evidence included paperwork containing [Appellant's] name and the address, a picture of Appellant on the mantel in the living room, and men's clothing recovered from the home. Additionally, multiple officers who had conducted surveillance of the property testified that they had seen appellant repeatedly enter and leave the residence on August 23, 2013.
>
> The Commonwealth also introduced evidence to support its allegation that Appellant was in constructive possession of the firearm and drug paraphernalia. In the living room closet, the officers found a pistol, gloves and a box with additional rounds inside an unlocked safe. The same closet contained a men's winter jacket containing drug paraphernalia and latex gloves. DNA evidence demonstrated that one of the gloves had been worn by Appellant. Finally, Appellant provided the Commonwealth's best evidence in the taped prison phone calls, in which he referred to the residence and the recovered pistol as his own. From this evidence, a reasonable jury could easily conclude that Appellant had constructively possessed the firearm and drug paraphernalia.

*Id.* at 5–6.

Section 6105(a) of the Uniform Firearms Act, 18 Pa.C.S. § 6105(a)(1), prohibits a person convicted of any of thirty–eight specified offenses enumerated in section 6105(b) from possessing, using, or controlling a firearm. At trial, the Commonwealth introduced a certified copy of Appellant's criminal record from Perry County, Pennsylvania, indicating that Appellant was convicted of aggravated assault, one of those defined

offenses, in March of 2000. N.T., 11/4/15, at 136. Appellant did not object to the admission of this document or refute its reliability. *Id.* at 137. Thus, the sole challenge to the sufficiency of the evidence supporting Appellant's conviction is whether the Commonwealth proved that he possessed the firearm.

In the instant matter, because the subject firearm was not found on Appellant's person, the Commonwealth was required to establish that Appellant constructively possessed the gun. The Commonwealth may meet its burden by proving actual possession, constructive possession, or joint constructive possession. *Commonwealth v. Vargas*, 108 A.3d 858, 868 (Pa. 2014) (quoting *Commonwealth v. Thompson*, 428 A.2d 223, 234 (Pa. Super. 1981)). "Constructive possession is an inference arising from a set of facts that establishes that possession of the contraband was more likely than not." *Commonwealth v. Parker*, 847 A.2d 745, 750 (Pa. Super. 2004) (quoting *Commonwealth v. Thompson*, 779 A.2d 1195, 1199 (Pa. Super. 2001) (internal citations omitted)).

Constructive possession is defined as "conscious dominion" which has been explained as "the power to control the contraband and the intent to exercise that control." *Commonwealth v. Hopkins*, 67 A.3d 817, 820–821 (Pa. Super. 2013) (quoting *Commonwealth v. Brown*, 48 A.3d 426, 430 (Pa. Super. 2012)). Constructive possession may be established by the totality of the circumstances, *Brown*, 48 A.3d at 430, and can be proven by

circumstantial evidence. ***Commonwealth v. Valette****,* 613 A.2d 548, 550 (Pa. 1992) (quoting ***Commonwealth v. Macolino****,* 469 A.2d 132, 134 (Pa. 1983)). Furthermore, the fact that another person might have equal access and control to an object does not exclude a defendant's constructive possession. ***Commonwealth v. Haskins***, 677 A.2d 328, 330 (Pa. Super. 1996).

Appellant challenges the sufficiency of the evidence supporting the jury's constructive possession of the firearm finding for three reasons: 1) he did not reside at 1109 North 12th Street; 2) neither Appellant's fingerprints nor his DNA were found on the firearm; 3) an inquiry into the chain of ownership of the gun did not connect Appellant to the firearm. Each of Appellant's challenges to the sufficiency of the evidence can be rebutted.

Appellant first disputes that the Commonwealth presented reliable evidence that he resided at 1109 North 12th Street. Appellant contends that because he had lived at that location previously and continues to spend time there, it is not unusual that mail sent to him at that address,[3] some items of his clothing, and a photograph of him would be found there. While this explanation is reasonable, these same facts are also compelling

---

[3] Appellant avers that the mail found with his name and the 1109 North 12th Street address is not significant because "the most recent piece of mail was dated July 18, 2013, months prior to this incident." Appellant's Brief at 34. The description of the mail as outdated is obviously incorrect since the events in question occurred on August 23, 2013, only thirty-six days from the postmarked date.

circumstantial evidence that Appellant did in fact reside at 1109 North 12th Street. The only counter-evidence offered by Appellant is his own and Latasha Cruz's testimony that he no longer lived there. Apparently, the jury, sitting as the finder of fact, did not credit the testimony of these witnesses, and "this Court cannot substitute its judgment for that of the factfinder on issues of credibility." *Commonwealth v. Brown*, 71 A.3d 1009, 1014 (Pa. Super. 2013). Thus, the Commonwealth presented sufficient evidence establishing that Appellant resided at 1109 North 12th Street.[4]

Appellant next maintains that the absence of his fingerprints or DNA on the firearm argues against a conclusion that he constructively possessed the contraband. We do not agree. As the trial court summarized, a firearm, gloves, and a box of ammunition were found at Appellant's residence in the living room closet in an unlocked safe. The DNA evidence indicated that one of the gloves had been worn by Appellant. This evidence, although circumstantial, sufficiently linked Appellant to the firearm. *See Commonwealth v. Lopez*, 57 A.3d 74, 80 (Pa. Super. 2012) (holding that the lack of forensic evidence was not fatal to the prosecution's case based on wholly circumstantial evidence). Furthermore, the trial court identified

---

[4] Appellant also urges that because he did not live at 1109 North 12th Street, it "cannot be found that Appellant was in joint constructive possession as discussed in *Commonwealth v. Macolino,* 469 A.2d 132, [134] (Pa. 1983)." Appellant's Brief at 35. Our conclusion that the evidence demonstrated that Appellant resided at that address discredits Appellant's argument.

Appellant's statements in the taped prison telephone calls where he referred to the residence and the recovered firearm as his own as the most compelling evidence of Appellant's possession of the contraband. Appellant's rebuttal to the significance of this evidence is that any of his statements indicating that he resided at 1109 North 12th Street or owned the firearm at issue were "negated by the evidence, or lack thereof, presented at trial." Appellant's Brief at 36. We are not persuaded by Appellant's dubious position that we should ignore his admissions of residence and ownership.

Appellant also submits that the Commonwealth was unable to link him to the firearm through an inquiry as to sales records and ownership documents. While this is an accurate statement, it is irrelevant to a constructive possession inquiry. It is not necessary that Appellant owned the gun, legally or otherwise, to conclude that he constructively possessed the firearm.

Appellant likewise contends that the evidence was insufficient to sustain his conviction for possession of drug paraphernalia. Specifically, Appellant argues that the Commonwealth failed to introduce enough circumstantial evidence to prove beyond a reasonable doubt that Appellant

was in constructive possession of the drug packaging materials found in the pocket of the men's jacket hanging in the closet.[5]

Appellant maintains that the Commonwealth was unable to prove constructive possession of the drug paraphernalia because: (1) he did not reside at 1109 North 12th Street on August 23, 2013; (2) the North Face jacket was inadvertently left at the residence following Appellant's move; (3) Latasha Cruz testified that she had worn the jacket in recent times and; (4) no physical evidence linked Appellant to the jacket. Appellant's arguments in this regard thus mimic those advanced in support of his position that the Commonwealth failed to prove that he constructively possessed the firearm, which we have concluded lack merit.

Accordingly, we reject Appellant's assertion that the evidence was insufficient to demonstrate that he constructively possessed the drug paraphernalia. First, the evidence established that Appellant lived at 1109

_____

[5] 35 P.S. § 780-113(a)(32) provides that the following activities are prohibited:

> (32) The use of, or possession with intent to use, drug paraphernalia for the purpose of planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packing, repacking, storing, containing, concealing, ingesting, inhaling or otherwise introducing into the human body a controlled substance in violation of this act.

35 P.S. § 780-113(a)(32).

North 12th Street. Second, the jury apparently decided that neither Appellant nor Cruz testified credibly. *See Commonwealth v. Alicia*, 92 A.3d 753, 761 (Pa. 2014) ("the question of a witness's credibility is reserved exclusively for the jury") (quotation omitted). Finally, the jacket was a size that would fit Appellant and was discovered hanging in the same closet as the safe containing the firearm. The fact that no physical evidence linked Appellant to the jacket does not undermine the convincing circumstantial evidence that he constructively possessed the drug packaging materials.

Viewing this evidence favorably to the Commonwealth, as we must, *see Commonwealth v. Watley*, 81 A.3d 108, 112 (Pa. Super. 2013), we conclude that it was sufficient to enable the jury to find that Appellant unlawfully possessed a firearm and drug paraphernalia. We thus turn to Appellant's contention that the trial court erred in denying his motion to suppress.

Appellant first argues that the search warrant should not have been issued because it did not establish probable cause of theft by deception and, therefore, was unconstitutional under the United States and Pennsylvania Constitutions. The trial judge[6] relied upon the following findings of fact in reaching his conclusion that the search warrant was constitutionally valid:

---

[6] The same jurist presided over the suppression hearing and Appellant's trial.

- 13 -

1. Detective James Gresh received information from a confidential source ["CS"] indicating that [Appellant] was known to sell crack cocaine and to carry a gun. The source also provided the location and phone number with which [Appellant] conducted his drug sales. Later investigation identified [Appellant's] address as 1109 North 12th Street in the City of Reading.

2. On August 23, 2013, Detective Gresh orchestrated a controlled purchase of cocaine from [Appellant]. The same [CS] placed a call to [Appellant], and they met in the 1100 block of Birch Street.

3. While the [CS] had been waiting for [Appellant] to arrive, several Berks County Detectives conducted surveillance of 1109 North 12th Street, where they observed [Appellant] exit from a rear gate on the property.

4. The [CS] gave [Appellant] prerecorded United States currency, and [Appellant] told him to remain in the area while [Appellant] went to retrieve crack cocaine.

5. The detectives observed [Appellant] walk through alleyways until he reentered the gate at 1109 North 12th Street.

6. After about thirty minutes, [Appellant] had never returned to the 1100 block of Birch Street, and [Appellant] did not answer any phone calls from the [CS].

7. Around 2:30 p.m., the detectives observed [Appellant] enter and exit the residence multiple times. Meanwhile, Detective Gresh prepared a search warrant for permission to search the body of [Appellant], in addition to his residence at 1109 North 12th Street.

8. The Affidavit of Probable Cause accompanying the search warrant application summarized the abovementioned incidents and alleged that [Appellant] had violated 18 Pa.C.S.A. § 3922, which pertains to theft by deception.

9. An attachment to the search warrant included images of the prerecorded currency that was used for the attempted narcotics purchase.

10. Magisterial District Judge Wally Scott signed the search warrant at approximately 3:40 p.m. the same day.

11. During the preparation of the search warrant and after it was signed, Detective Gresh maintained contact with his fellow detectives via radio and cell phone. Some detectives maintained surveillance of 1109 North 12th Street.

12. Approximately five or ten minutes after the warrant was signed, Detective Gresh was informed via radio that [Appellant] had left the residence and was a passenger in a vehicle.

13. At that time, Detective Gresh has been preparing to execute the search warrant. After the radio transmission, he positioned himself in order to assist with surveillance of the vehicle.

14. The vehicle was stopped by a patrolman with the Reading Police at approximately 3:57 p.m., and Detective Gresh arrived immediately afterwards.

15. The car had been stopped on a one-way stretch of North 10th Street—a residential area with lots of activity.

16. Detective John Lackner searched [Appellant] and removed a cell phone, marijuana, and a large sum of United States currency.

17. [Appellant] was placed in custody and transported to Central Booking at the Berks County Sheriff's Office. The driver of the vehicle was permitted to leave.

18. After [Appellant] had been placed in custody, the detectives regrouped at a prearranged location in order to execute the search warrant at 1109 North 12th Street.

19. At 4:25 p.m., the detectives executed the search warrant at the residence. The detectives gained entry through an open, unlocked door. Two females, including the leaseholder, and some young children were present.

20. Various items were seized from the residence, including a pistol, ammunition, gloves, clear plastic baggies, and paperwork connected to [Appellant].

Trial Court Opinion, 8/21/14, at 1–4.

Based upon these findings, the trial court concluded that the Commonwealth met its burden of showing that the items were lawfully seized pursuant to the search warrant. Applying the *Illinois v. Gates*, 462 U.S. 213 (1983) "totality of circumstances" test,[7] the trial court rejected Appellant's characterization of the warrant as an unconstitutional general investigatory tool, deciding instead that:

> [T]he issuing authority properly authorized a search for the prerecorded currency. As described in our findings of fact, *supra*, a confidential source gave [Appellant] prerecorded United States currency in exchange for crack cocaine. After the

___

[7] In *Illinois v. Gates*, 462 U.S. 213 (1983), the United States Supreme Court established the "totality of the circumstances" test for determining whether a request for a search warrant under the Fourth Amendment is supported by probable cause. *Id.* at 238–239. In *Commonwealth v. Gray*, 503 A.2d 921 (Pa. 1986), the Pennsylvania Supreme Court adopted the totality of the circumstances test for purposes of reviewing probable cause determinations under Article I, Section 8 of the Pennsylvania Constitution. *Id.* at 925. Under the *Gates* "totality of the circumstances" test:

> the task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all of the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Gray*, 503 A.2d at 925 (quoting *Gates*, 462 U.S. at 238–239) (internal citation omitted).

passage of a substantial amount of time, [Appellant] had yet to deliver the drugs, and he would not answer phone calls. Given this background and the deference due to the issuing authority, we find that the warrant was supported by probable cause to search for the prerecorded currency.

Trial Court Opinion, 8/21/14, at 5.[8]

In reviewing a trial court's denial of a suppression motion, it has often been stated that:

[W]e may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

**Commonwealth v. Russo**, 934 A.2d 1199, 1203 (Pa. 2007) (citation omitted). However, the Pennsylvania Supreme Court recently clarified our scope of review when considering a challenge to a trial court's suppression ruling as it relates to "the extent of the record that the appellate court consults when conducting that review." **In re L.J.**, 79 A.3d 1073, 1080 (Pa. 2013). Therein, the Court decided that such review is limited to the suppression hearing record, and "it is inappropriate to consider trial evidence as a matter of course, because it is simply not part of the suppression record, absent a finding that such evidence was unavailable during the suppression

---

[8] We note that the trial court decided that the search warrant was not supported by probable cause with regard to certain drug-related items listed in Attachment A to the application for the search warrant. Trial Court Opinion, 8/21/14, at 6.

hearing." *Id.* at 1085. Because prior cases held that a reviewing court could consider the trial record in addition to the suppression record, the Supreme Court determined that the more limited scope announced in *In re L.J.* would apply prospectively to cases where the suppression hearing occurred after October 30, 2013. *Id.* at 1088–1089. Instantly, the subject suppression hearing was held on January 16, 2014; accordingly, our scope of review is confined to the suppression hearing record.

Appellant initially submits that the search warrant was invalid under *Commonwealth v. Graham*, 596 A.2d 1117 (Pa. 1991). In *Graham*, the Pennsylvania Supreme Court overturned a theft by deception conviction when the only evidence of the crime was the fact that the defendant did not deliver cocaine to an informant who allegedly gave the defendant money to purchase the drugs. "There were no additional facts in the record from which the intent to deceive could reasonably be inferred." *Id*. at 1118. Appellant contends that the search warrant herein was similarly unsupported by probable cause that evidence of a theft by deception would be discovered because, as in *Graham*, there was no evidence of a legally enforceable obligation between Appellant and the CS.

*Graham* is easily distinguishable from the matter at hand. First, the *Graham* Court was reviewing whether the evidence was sufficient to support a conviction of theft by deception, whereas we are concerned with whether certain facts provided probable cause for the issuance of a search warrant, a

lesser evidentiary burden for the Commonwealth. *Graham* is further distinguishable because additional evidence supported the validity of the warrant issued herein. Detective Gresh observed the CS place a call to Appellant and heard the CS conduct a drug-related conversation with Appellant. N.T. (Omnibus Pretrial Hearing), 6/10/14, at Exhibit 1, p.6 (Application for Search Warrant). Additionally, the officers conducting surveillance observed the CS provide Appellant with currency and saw Appellant walk away. *Id*. When Appellant did not return to the meeting site, the CS placed numerous calls to Appellant which were unanswered. *Id.* A subsequent search of the CS for the prerecorded currency and/or narcotics had "a negative result." *Id*. Thus, the quantum of evidence of theft by deception against Appellant also renders *Graham* inapposite.

In addition to his reliance on *Graham*, Appellant asserts that the search warrant was issued without probable cause because the events depicted in the supporting affidavit did not demonstrate that a theft by deception had occurred. Appellant, however, does not offer any particularized challenge to either the trial court's factual findings or its legal determination that the search warrant was supported by probable cause as it related to the prerecorded currency. Appellant merely proclaims his disagreement with the trial court's conclusion. Such an argument does not merit relief.

Appellant also contends that the search warrant for the residence was rendered stale when the search of his person led to discovery of the prerecorded currency sought in the warrant application. The trial court rejected this argument, reasoning:

> [Appellant's] motion also claims that the detectives were unauthorized to execute the search warrant at 1109 North 12th Street after they had already recovered a large sum of money from [Appellant]. The motion specifically argues: "Prior to executing the search warrant, Detective Gresh indisputably was possessed of knowledge that the affidavit supporting the warrant now contained material misstatements regarding the location of the evidence being sought, and knew or should have known that the issuing authority would consider such information material to a decision to allow execution of the warrant." MOTION TO SUPPRESS, June 2, 2014 at ¶ 11.
>
> [Appellant] would impose the implementation of a police practice that is constitutionally unrequired and severely detrimental to ongoing investigations. The seizure of [Appellant] occurred on a busy one-way street with lots of activity. Because there was nothing distinguishable about the money possessed by [Appellant], the detectives were unable to immediately confirm that it was the prerecorded currency. [Appellant] suggests that given the specificity of the search warrant the officers should have analyzed the twenty-dollar bills before searching the residence. This would require officers to compare the eleven-character alphanumeric serial numbers of fifty separate bills to those depicted in Attachment B.[9] It is ludicrous to expect this sort of work to be done on the hood of a car on a busy street, in the midst of an ongoing investigation. This is especially unreasonable given two other facts. First, ongoing surveillance of the residence by the detectives indicated that other individuals were entering and exiting the residence. Second, the driver had been allowed to leave the scene of the traffic stop, so

_____

[9] Attachment B to the application for the search warrant included reproductions of the prerecorded currency, consisting of fifty twenty-dollar bills.

he could have informed those at the house to dispose of the contraband.

The officers were properly authorized by the warrant to conduct a search of the residence, where all or some of the prerecorded currency could have been located. [Appellant's] argument ignores the reality of police investigations and would impose a burden that is patently unreasonable and not contemplated by the law. Accordingly, we find that the detective's search of 1109 North 12th Street comported with the applicable constitutional requirements.

Trial Court Opinion, 8/21/14, at 7–8.

Stale information cannot provide probable cause in support of a warrant. As we observed in *Commonwealth v. Gomolekoff*, 910 A.2d 710 (Pa. Super. 2006):

Age of the information supporting a warrant application is a factor in determining probable cause. If too old, the information is stale, and probable cause may no longer exist. Age alone, however, does not determine staleness. "The determination of probable cause is not merely an exercise in counting the days or even months between the facts relied on and the issuance of the warrant." Rather, we must also examine the nature of the crime and the type of evidence.

*Id*. at 713 (quoting *United States v. Harvey*, 2 F.3d 1318, 1322 (3d Cir. 1993)).

Appellant argues that upon the discovery of the currency on his person, law enforcement personnel should have taken the necessary measures to determine whether that currency matched the prerecorded currency described in the affidavit of probable cause. Appellant avers that the effort required to connect the currency found on his person to the prerecorded currency would not have imposed on undue hardship on law

enforcement so as to outweigh the heightened expectation of privacy in one's home protected by the United States and Pennsylvania Constitutions.[10] Additionally, Appellant claims that because law enforcement now possessed the sought-after evidence, any concern regarding the destruction of additional evidence was unwarranted.

While acknowledging that age of the information supporting the affidavit of probable cause is not outcome determinative, we observe that the present search warrant was issued approximately one hour after the alleged theft by deception occurred. Substantively, we agree with the trial court's disposition of the staleness issue. It would be unreasonable to expect the police officers to conduct a time-consuming inspection and comparison of the currency found on Appellant's person to the serial numbers on the prerecorded currency while in the midst of a criminal investigation. Additionally, the law enforcement personnel were justified in their concern that possible recovery of other evidence at the residence might be jeopardized given the activity at the dwelling and the fact the Appellant's companion in the car had been permitted to leave the scene of Appellant's stop. The trial court's factual findings are supported by the record and the legal conclusions drawn from those facts are correct.

_____

[10] Appellant's argument in this regard is curious in that his position at trial and on appeal is that the dwelling located at 1109 North 12th Street is not his residence.

Appellant's final objection to the search warrant concerns its execution, which Appellant argues went beyond the scope of the search authorized. The trial court concluded that the evidence seized from the residence at 1109 North 12th Street, *i.e.*, the firearm and the clear plastic bags marked with a logo (drug paraphernalia), were admissible under the plain view exception and the inevitable discovery doctrine.

The plain view exception provides that:

> evidence in plain view of the police can be seized without a warrant, **Coolidge v. New Hampshire**, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), as modified by **Horton v. California**, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990), and it was adopted by our Supreme Court in **Commonwealth v. McCullum**, 529 Pa. 117, 602 A.2d 313 (1992). The plain view doctrine applies if 1) police did not violate the Fourth Amendment during the course of their arrival at the location where they viewed the item in question; 2) the item was not obscured and could be seen plainly from that location; 3) the incriminating nature of the item was readily apparent; and 4) police had the lawful right to access the item.

**Commonwealth v. Anderson**, 40 A.3d 1245, 1248–1249 (Pa. Super. 2012) (quoting **Commonwealth v. Sodomsky**, 939 A.2d 363, 370 (Pa. Super. 2007) (some citations omitted)). Furthermore, under the inevitable discovery doctrine:

> "[E]vidence which would have been discovered was sufficiently purged of the original illegality to allow admission of the evidence. [I]mplicit in this doctrine is the fact that the evidence would have been discovered despite the initial illegality." **Commonwealth v. Bailey**, 986 A.2d 860, 862 (Pa. Super. 2009), *appeal denied,* 606 Pa. 660, 995 A.2d 350 (2010). Evidence is admissible under this doctrine where the Commonwealth demonstrates "by a preponderance of the

evidence that the illegally obtained evidence . . . inevitably would have been discovered through lawful means." *Id.*

*Anderson*, 40 A.3d at 1249 n.6.

While the trial court at times conflates its discussion of these two distinct concepts, it correctly determined that the items seized from 1109 North 12th Street were admissible under the inevitable discovery doctrine "as they would have been found during the valid search for the prerecorded currency." Trial Court Opinion, 8/21/14, at 7.[11] Appellant's only argument against the applicability of the inevitable discovery doctrine is that the police officers would not have inevitably found the items because the prerecorded currency identified in the warrant was discovered prior to the search of the residence; therefore, the subject currency would not have been discovered at that location.

Appellant's argument is without factual or legal foundation. There is simply no basis for Appellant's bald assertion that all of the prerecorded currency had been recovered prior to the search at 1109 North 12th Street. Additionally, we have already determined that the investigating officers had probable cause to search the residence despite the fact that the search of Appellant's person revealed a large amount of currency. Accordingly,

---

[11] Having determined that the trial court correctly relied upon the inevitable discovery doctrine to validate seizure of the items discovered at the residence, we need not discuss whether the plain view exception would likewise justify confiscation of the items.

Appellant's argument that the search at 1109 North 12th Street was beyond the scope of the warrant is unavailing.

In conclusion, Appellant failed to demonstrate that the search warrant was issued illegally, that the trial court's findings were not supported by the record or that its legal conclusions were erroneous, and that the search exceeded the scope of the warrant. Accordingly, the trial court's decision to deny Appellant's motion to suppress was correct.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/30/2016