J-S34006-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| MIGUEL ENRIQUE VIALIZ | : | |
| | : | |
| Appellant | : | No. 2040 MDA 2019 |

Appeal from the Judgment of Sentence Entered November 4, 2019
In the Court of Common Pleas of Lancaster County
Criminal Division at No(s):  CP-36-CR-0001072-2019

BEFORE:  PANELLA, P.J., BENDER, P.J.E., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY PANELLA, P.J.:                **FILED SEPTEMBER 15, 2020**

Miguel Vializ appeals from the judgment of sentence, entered on November 4, 2019, of an aggregate term of 4½ to 10 years' imprisonment, in the Court of Common Pleas of Lancaster County, following his nonjury conviction of one count each of possession with intent to deliver ("PWID") fentanyl, PWID cocaine, PWID marijuana, possession of drug paraphernalia, and tampering with physical evidence.[1]  On appeal, Vializ challenges the denial of his motion to suppress and the discretionary aspects of his sentence.  After review, we affirm.

Due to the limited scope of Vializ's issues on appeal, we need only summarize the history of this case.  In late December 2018 and January 2019,

---

[1] 35 P.S. §§ 780-113(a)(30), (16), (32), and 18 Pa.C.S.A. § 4910(1), respectively.

three members of the Lancaster County Drug Task Force received information from three confidential informants ("CI"), that Vializ was dealing drugs from his apartment in Lititz, Pennsylvania.

Following an independent investigation, members of the Lancaster County Drug Task Force obtained a warrant and searched Vializ's apartment on January 25, 2019, recovering 470 bags containing fentanyl, 8.8 grams of cocaine, 80.8 grams of marijuana, U.S. currency and drug paraphernalia. The next day, the Commonwealth filed charges against Vializ.

Vializ filed an omnibus pretrial motion, seeking to suppress the seized items. A hearing took place on August 12, 2019, following the trial court's denial of the motion to suppress, the court held a nonjury trial and found Vializ guilty of all charges.

Following receipt of a pre-sentence investigation report ("PSI"), on November 4, 2019, the trial court sentenced Vializ. On November 13, 2019, Vializ filed a motion to modify his sentence. The trial court denied the motion and this timely appeal followed.[2]

In his first issue, Vializ contends the trial court erred in denying his motion to suppress because "the search warrant was so lacking in probable cause so as to render the issuance of the warrant manifestly unreasonable."

---

[2] On January 3, 2020, in response to the trial court's order, Vializ filed a timely concise statements of errors complained of on appeal. *See* Pa.R.A.P. 1925(b). On January 30, 2020, the trial court issued an opinion. *See* Pa.R.A.P. 1925(a).

Vializ's Brief, at 8-10.  Specifically, Vializ alleges only one of the three CIs had previously provided information leading to a conviction and the information in the warrant was stale.  ***See id.***  Our analysis is guided by the following legal principles:

When reviewing a challenge to a trial court's denial of a suppression motion, our standard of review is

> limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.  Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole.  Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous.  Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts.  Thus, the conclusions of law of the courts below are subject to our plenary review.

***Commonwealth v. Delvalle***, 74 A.3d 1081, 1084 (Pa. Super. 2013).

> The legal principles applicable to the instant case are well established.  Before an issuing authority may issue a constitutionally valid search warrant he or she must be furnished with information sufficient to persuade a reasonable person that probable cause exists to conduct a search.  The requisite probable cause must exist at the time the warrant is issued and be based on facts closely related in time to the date of issuance.

***Commonwealth v. Jones***, 484 A.2d 1383, 1387 (Pa. 1984) (citations omitted).

Further, "[i]n determining whether a search warrant is supported by probable cause, appellate review is confined to the four corners of the affidavit." ***Commonwealth v. Galvin***, 985 A.2d 783, 785 (Pa. 2009). Importantly, "[t]he issuing authority, in determining whether probable cause has been established, may not consider any evidence outside of the affidavits." ***Commonwealth v. Coleman***, 830 A.2d 554, 560 (Pa. 2003) (citation omitted).

In part, Vializ contends that the information contained in the search warrant application was too old, or "stale," to be reliable. Settled Pennsylvania law establishes stale information cannot provide probable cause in support of a warrant. ***Commonwealth v. Gomolekoff***, 910 A.2d 710, 713 (Pa. Super. 2006). In particular:

> [A]ge of the information supporting a warrant application is a factor in determining probable cause. If too old, the information is stale, and probable cause may no longer exist. Age alone, however, does not determine staleness. The determination of probable cause is not merely an exercise in counting the days or even months between the facts relied on and the issuance of the warrant. Rather, we must also examine the nature of the crime and the type of evidence.

***Commonwealth v. Janda***, 14 A.3d 147, 158–59 (Pa. Super. 2011).

Vializ combines his staleness argument with an allegation that the CIs whose tips formed part of the basis for the search warrant application were not established as sufficiently reliable. "A determination of probable cause based upon information received from a confidential informant depends upon the informant's reliability and basis of knowledge viewed in a common sense,

- 4 -

non-technical manner." ***Commonwealth v. Clark***, 28 A.3d 1284, 1288 (Pa. 2011). "An informant's tip may constitute probable cause where police independently corroborate the tip, or where the informant has provided accurate information of criminal activity in the past, or where the informant himself participated in the criminal activity." ***Id.*** "Under the totality-of-the-circumstances approach, there is no talismanic recitation of a particular phrase with respect to 'reliability' or 'basis of knowledge' that will either be required or will suffice to conclusively establish, or conclusively disaffirm, the existence of probable cause." ***Id.***, at 1292.

The affiant in this matter was Detective Yevgeniy Kertsman, of the Lancaster County Drug Task Force. After setting forth his training and experience, as well as relevant information about drug dealers and the business of drug dealing, the affidavit of probable cause stated, in relevant part:

> 3. That during the month of January 2019, your Affiant had a conversation with a confidential informant (CI#1), who has expressed his/her knowledge of controlled substances, to specifically include the sale of heroin, its pricing, packaging, and terminology. During this meeting, CI#1 stated that he/she was familiar with an individual whom he/she knew as a Puerto Rican male in his late 20's, about 5'5" and 200 lbs who lives at 16 W Lemon Street in Lititz, PA. This male drives a gray Acura that is usually parked to the rear of the residence. The CI#1 knew this to be true because he/she had purchased heroin from this male as recent[ly] as end of December 2018 on at least two occasions. Every time the CI#1 would go to the rear of 16 W Lemon Street residence and enter through the door in the back of the apartment building. The CI#1 described only two doors at the rear and that he/she would enter the door on the right.

4.     That during the month of January 2019, Detective Troy Deshong of the Lancaster County Drug Task Force, met with a confidential informant (CI#2) who has expressed his/her knowledge of controlled substances, to specifically include the sale of heroin, its pricing, packaging, and terminology.  During this meeting, CI#2 stated that he/she was familiar with an individual whom he/she knew as Miguel Vializ, also known as "Chino."  He is a Hispanic male in his late 20's, who lives at 16 W Lemon Street in Lititz, who is in the business of selling heroin from his apartment.   CI#2 knew this to be true because he/she had purchased heroin from Miguel Vializ also known as "Chino" on numerous occasions.

5.     That your Affiant searched the name Miguel Vializ, in the J-Net database.   During my search I located a photograph of a subject by the name of Miguel Enrique Vializ, DOB:  8/23/1991.  This male matched the description provided by CI#1.

6.     That during the month of January 2019, your Affiant showed CI#1 a PA J-Net photograph of Miguel Enrique Vializ.   CI#1 positively identified Miguel Enrique Vializ as the person he/she knows is in the business of selling heroin as mentioned in paragraph #3.

7.     That during the same month of 2019, Detective Deshong also showed a PA J-Net photograph of Miguel Enrique Vializ DOB: 8/23/1991 to the CI#2, who also identified him as "Chino" who has sold him heroin on previous occasions from 16 W Lemon St, Lititz, PA.

8.     That during the month January 2019, Detective Adam Weber of the Lancaster County Drug Task Force spoke with a reliable confidential informant (CI#3) who has led to at least one (1) seizure and conviction for felony violations of the PA Controlled Substance, Drug, Device and Cosmetic Act.   CI#3 has demonstrated his/her knowledge of controlled substances, to specifically include cocaine, its packaging, pricing, and terminology.  CI#3 related that he/she has personal knowledge of a Hispanic male, who is in his late 20's and who resides at 16 W Lemon St in Lititz, PA. CI#3 stated that this male is in the business of selling large quantities of cocaine from 16 W Lemon St, Lititz Pa residence. CI#3 knew this information to be true because he/she had purchased a quantity of cocaine from this Hispanic

male at 16 W Lemon Street Lititz residence as recent as the first week of January 2019.

9.    That during the week of January 20th of 2018, your Affiant conducted surveillance of 16 W Lemon Street, Lititz, PA. In the course of surveillance, your Affiant observed and positively identified Miguel Enrique Vializ, DOB: 8/23/1991, enter 16 W Lemon Street, apartment # 2 residence (door in the apartment building on the right as described by CI#l in paragraph 3). Your Affiant also observed Vializ enter and exit a gray in color Acura TL sedan bearing Pennsylvania registration KPJ-7567. Upon check of this registration through PennDot your Affiant discovered that this vehicle is registered to Miguel Enrique Vializ with a registered address of 16 W Lemon Street, Apt #2, Lititz, PA.

10.    Moreover, your Affiant observed short-term foot traffic into 16 W Lemon St, Apt #2 residence. During said surveillance your Affiant observed numerous individuals go to Vializ's apartment, spend a minute or less and then depart the area. Your Affiant also observed a gray Ford 4-door sedan, bearing Pennsylvania registration KSN3529, park in the 1st block of W Lemon Street with one Hispanic male occupant. After appearing to be texting on his cellular phone the male exited his vehicle and proceed[ed] into Vializ's apartment; a minute later this male left the area. These short term meetings are consistent with drug trafficking.

11.    That during the month of January 2019 your affiant ran a criminal history check on Miguel Enrique Vializ. DOB: 08/23/1991. This check showed that Vializ pleaded guilty to two counts of felony (Possession with Intent to Deliver) violations of the PA Controlled Substance, Drug, Device and Cosmetic Act on 01/20/2015.

12.    That on 23 January 2019 at approximately 0330 hours, your Affiant and Detective Deshong with the Lancaster County Drug Task Force went to 16 W Lemon Street, Lititz, PA. At this time, there was trash placed on the side of the apartment building adjacent to Pine Ln. This is a regular location where trash truck picks up the trash and no other location is used by the trash truck for this apartment building. Your Affiant conducted a trash pull of three (3) black in color trash bags of abandoned trash. Upon executing a search of the trash, your Affiant found the following items; one (1) clear plastic corner cut/tom sandwich bag containing white powder residue, one (1) clear plastic zip-lock

style sandwich bag with white powder residue, three (3) cut or torn tops of a zip-lock style plastic bags, one (1) blue in color, unused glassine sleeve that is commonly used to contain heroin, two (2) automotive repair bills (Acura) with Miguel Vializ (dated 1/12/19), Blue Ridge cable contract in the name of Evealisa Lopez and address of 16 W Lemon St, Apt 2, Lititz, PA.

13.    That on 23 January 2019, your Affiant performed a field test on a portion of the white powder residue from the clear plastic corner cut/tom sandwich bag located in the trash and a positive result was obtained for the presence of cocaine.

14.    That in my training and experience sellers of cocaine often keep larger quantities of cocaine in sandwich bags and then put a quantity of the drugs in the corner of plastic bag, twist and tear or cut the corner off of the bag and then tie the open end to package the drug for sales.  Let it also be noted that no personal use drug paraphernalia was found such as snorting straws or hypodermic needles.  Moreover, upon checking Miguel Vializ's Facebook account which is under the name of "Lele El Duro," your Affiant discovered that Vializ has numerous photographs of a female named, Evealisa Lopez along with a child.  This is the name that was discovered on the Blue Ridge cable bill in paragraph # 12.

15.    Based on the aforementioned facts and circumstances, and your Affiant's experience in over 200 drug related cases, as a lead detective, as an assisting detective and as an undercover detective making controlled buys of cocaine and heroin, your Affiant believes that Miguel Enrique Vializ is in business of selling cocaine and heroin from 16 W Lemon St, Apartment #2, Lititz, PA.

Affidavit of Probable Cause, 1/26/19, at unnumbered pages 3-4.

As noted above, Vializ claims, without elaboration or citation to relevant legal authority, the affidavit fails because only one of the CIs had "any indicia of reliability."  Vializ's Brief, at 9.  He contends the information was stale.  *Id.* He maintains the affidavit does not "provide any information to establish that either [of the other] informant[s'] hearsay information is trustworthy."  *Id.*

Lastly, he argues the affidavit does not sufficiently tie the drug paraphernalia to Vializ's apartment, and does not provide a specific date on which the police observed the short-term foot traffic. *Id.* at 10.

Our review of the certified record leads us to agree with the suppression court: the affidavit, as a whole, provided the magistrate with sufficient information to conclude there was a reasonable probability evidence of criminal activity, drug use, would be found at 16 W. Lemon Street, Lititz, PA.

First, while two of the CIs had not provided information in the past this is only one factor to consider in making a determination of reliability. *See Commonwealth v. Manuel*, 194 A.3d 1076, 1081 (Pa. Super. 2018) (*en banc*). All three CIs were able to describe or identify Vializ as the person that had sold them drugs within the past month, and all three provided the same, correct location of his apartment, each's information corroborating the others. This Court has held:

> [w]hen two independent informants both supply the same information about a particular crime to the police, each source tends inherently to bolster the reliability of the other. Although the information supplied by one questionable source may be insufficient, the probability is extremely small that a second independent source would supply identical information if it were not probably accurate. Such corroboration by independent sources produces the necessary reliability to establish probable cause.

*Commonwealth v. Dukeman*, 917 A.2d 338, 342 (Pa. Super. 2007) (citation omitted).

Moreover, the third CI had provided reliable information in the past, which led to not just an arrest but a felony conviction. That CI's information

in and of itself was sufficient to provide probable cause. ***See Clark***, 28 A.3d at 1288.

Lastly, the police conducted an independent investigation which determined Vializ had a prior criminal history of drug dealing and confirmed that his place of residence and vehicle matched the information given by the CIs. They conducted surveillance during the same week they requested the search warrant and observed activities consistent with drug dealing. Lastly, they pulled trash, and in the bag which contained documents addressed to Vializ and his girlfriend, they found paraphernalia consistent with drug dealing, including bags with cocaine residue, but no paraphernalia consistent with personal use.

Under the totality of the circumstances, we conclude, based on the above-mentioned facts presented within the four corners of the Affidavit, the issuing magistrate had a substantial basis for determining probable cause existed Vializ was trafficking drugs from his residence. Accordingly, the trial court properly denied his motion to suppress. Vializ's first issue does not merit relief.

In his second and final issue, Vializ challenges the discretionary aspects of his sentence. Specifically, he claims the sentence is harsh and excessive and the trial court failed to consider mitigating factors. ***See*** Vializ's Brief, at 10. We disagree.

The principles that guide our review are as follows:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

The right to appellate review of the discretionary aspects of a sentence is not absolute, and must be considered a petition for permission to appeal. An appellant must satisfy a four-part test to invoke this Court's jurisdiction when challenging the discretionary aspects of a sentence.

> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect; and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

\* \* \* \*

A substantial question will be found where an appellant advances a colorable argument that the sentence imposed is either inconsistent with a specific provision of the Sentencing Code or is contrary to the fundamental norms which underlie the sentencing process. At a minimum, the Rule 2119(f) statement must articulate what particular provision of the code is violated, what fundamental norms the sentence violates, and the manner in which it violates that norm.

**Commonwealth v. Zirkle**, 107 A.3d 127, 132 (Pa. Super. 2014) (citations omitted).

Here, Vializ preserved his claim by filing a motion to modify sentence and included a Pa.R.A.P. 2119(f) statement in his brief. He complains his sentence was harsh and excessive and the trial court failed to consider

mitigating circumstances. These claims, taken together, have been found to raise a substantial question. *See Commonwealth v. Dodge*, 77 A.3d 1263, 1272 (Pa. Super. 2013).

However, the substance of the claims is frivolous. Here, the trial court had the benefit of a PSI. "Where pre-sentence reports exist, we shall continue to presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Devers*, 546 A.2d 12, 18 (Pa. 1988). Further, Vializ's sentence was in the standard range of the sentencing guidelines. Where a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as presumptively reasonable under the Sentencing Code. *Commonwealth v. Moury*, 992 A.2d 162, 171 (Pa. Super. 2010). Under the circumstances of this case, we cannot conclude the imposition of concurrent standard range sentences constitutes an unreasonable sentence. Hence, Vializ's challenge to the discretionary aspects of his sentence is frivolous.

Accordingly, for the reasons discussed above, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/15/2020