J-S24038-19

2019 PA Super 198

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| DANIEL ANDREWS | : | |
| | : | |
| Appellant | : | No. 1385 EDA 2017 |

Appeal from the Judgment of Sentence April 13, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0007797-2014

BEFORE:   LAZARUS, J., McLAUGHLIN, J., and STEVENS*, P.J.E.

OPINION BY STEVENS, P.J.E.:                         **FILED JUNE 21, 2019**

Appellant Daniel Andrews appeals the judgment of sentence entered by the Court of Common Pleas of Philadelphia County after a jury convicted Appellant of several violations of the Uniform Firearms Act (VUFA).  Appellant asserts that the trial court erred in denying several of his pre-trial motions and abused its discretion by imposing a manifestly excessive sentence.  After careful review, we affirm.

On June 19, 2014, Michael Nesmith, Henry Crosby, Laticj McKnight, and Appellant were all present at Nesmith's home in Philadelphia.  The four individuals began to smoke "blunt" which contained K-2, a synthetic marijuana.  Thereafter, McKnight went upstairs to get a cigarette and Nesmith and Crosby began to play video games.

When Appellant asked Nesmith for a cigarette, Nesmith responded that he did not have one.  Appellant got up, walked to the door, turned around,

_____

*   Former Justice specially assigned to the Superior Court.

and fired shots at Nesmith and Crosby with a handgun. Despite the fact that Nesmith had been shot in the right thigh, he was able to go upstairs to tell McKnight that Appellant had shot him. McKnight and Nesmith came back downstairs, and found Crosby lying on the ground with a gunshot wound to the chest. After Crosby and Nesmith were transported to the hospital, medical personnel were able to remove the bullet from Crosby's right rib, but did not remove the bullet in Nesmith's thigh as surgery carried a high risk.

After the shooting, Appellant fled out of the home and attempted to escape by jumping on the back of a fire truck. When the firemen confronted Appellant, he became combative. Appellant was arrested after he was found wandering in the same neighborhood; authorities also discovered Appellant's firearm, which Appellant had discarded on the street. After officers took Appellant into custody, he confessed to shooting Crosby and Nesmith.

Appellant was charged with two counts of aggravated assault, persons not to possess a firearm, carrying a firearm without a license, carrying a firearm in public in Philadelphia, and possession of an instrument of crime (PIC). Appellant filed multiple pre-trial motions, including a motion to dismiss pursuant to Pa.R.Crim.P. 600 as well as suppression motions challenging the validity of the warrant used to search his home and the voluntariness of his confession to police. The trial court denied all of these pre-trial motions.

At Appellant's trial, over the Commonwealth's objection, the defense presented a defense of involuntary intoxication, claiming Appellant was not aware he smoked a substance containing K2, which had unintended effects.

On February 8, 2017, a jury acquitted Appellant of aggravated assault, but convicted him of persons not to possess a firearm, carrying a firearm without a license, carrying a firearm in public in Philadelphia, and PIC. Appellant filed a motion for acquittal for the PIC charge, which the lower court granted.

On April 13, 2017, the trial court sentenced Appellant to five to ten years' imprisonment for persons not to possess a firearm, two to five years' imprisonment for carrying a firearm without a license, and one to five years' imprisonment for carrying a firearm in public in Philadelphia. As all sentences were set to run consecutively, Appellant received an aggregate sentence of eight to twenty years' imprisonment. Appellant filed a post-sentence motion, which the lower court denied. Appellant filed a timely notice of appeal.

On May 1, 2017, the trial court ordered Appellant to file a Concise Statement of Errors Complained of on Appeal pursuant to Pa.R.A.P. 1925(b) within twenty-one days of its order, stating "any issue not properly included in the Statement timely filed and served … shall be deemed waived." Order, 5/1/17, at 1. Appellant did not file his 1925(b) statement until June 6, 2017.

Appellant raises the following issues for our review:

A. The trial court committed error when it denied the Appellant's pre-trial motions which included: motion to dismiss pursuant to Rule 600, motion to dismiss the search warrant, and motion to suppress the Appellant's statement.

B. The sentence received by the appellant was so extreme as to be an abuse of discretion and warrants a re-sentencing hearing.

Appellant's Brief, at 6.

- 3 -

As an initial matter, we note that Appellant's concise statement of matters complained of on appeal was untimely filed. However, the record in this case contains no indication that the trial court served Appellant with its order requiring a Rule 1925(b) statement. Our Court has stated that "[i]f the [trial court] docket does not show that notice of the entry of a Rule 1925(b) order was provided to an appellant, then we will not conclude that the appellant's issues have been waived for failure to file a Rule 1925(b) statement." **In re L.M.**, 923 A.2d 505, 510 (Pa.Super. 2007). The fact that the appellant actually received notice of the Rule 1925(b) order is irrelevant if "the docket does not reflect that notice was sent." **Id.** In this case, the docket does not show the court clerk mailed notice of the Rule 1925(b) order to Appellant. In addition, the trial court never signed the portion of the order indicating notice was served on Appellant. Therefore, we will not find waiver on that basis.

Moreover, even if the trial court had properly served its order upon Appellant, we would not find Appellant's issues to be waived by counsel's untimely filing of the 1925(b) statement. Our rules of appellate procedure prescribe: "If an appellant in a criminal case was ordered to file a Statement and failed to do so, such that the appellate court is convinced that counsel has been *per se* ineffective, the appellate court shall remand for the filing of a Statement *nunc pro tunc* and for the preparation and filing of an opinion by the judge." Pa.R.A.P. 1925(c)(3). In **Commonwealth v. Burton**, 973 A.2d

428 (Pa.Super. 2009), this Court discussed the ramifications of counsel's failure to file a timely 1925(b) statement:

> The complete failure to file the 1925 concise statement is *per se* ineffectiveness because it is without reasonable basis designed to effectuate the client's interest and waives all issues on appeal. Likewise, the untimely filing is *per se* ineffectiveness because it is without reasonable basis designed to effectuate the client's interest and waives all issues on appeal. Thus[,] untimely filing of the 1925 concise statement is the equivalent of a complete failure to file. Both are *per se* ineffectiveness of counsel from which appellants are entitled to the same prompt relief.
>
> The view that Rule 1925(c)(3) does not apply to untimely 1925 concise statements would produce paradoxical results. The attorney who abandons his client by failing to file a 1925 concise statement would do less of a disservice to the client than the attorney who files a 1925 concise statement beyond the deadline for filing.

*Id.* at 432–33. Herein, the trial court did not comment on the untimely filing of Appellant's Rule 1925(b) statement and, in fact, it addressed all of the issues raised therein. Therefore, a remand for the preparation of a trial court opinion is not necessary.

Appellant first challenges the trial court's denial of his motion to dismiss under Rule 600. We are guided by the following standard of review:

> [i]n evaluating Rule 600 issues, our standard of review of a trial court's decision is whether the trial court abused its discretion. Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.

The proper scope of review is limited to the evidence on the record of the Rule 600 evidentiary hearing, and the findings of the trial court. An appellate court must view the facts in the light most favorable to the prevailing party.

Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule 600. Rule 600 serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of Rule 600 was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.

So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule 600 must be construed in a manner consistent with society's right to punish and deter crime. In considering these matters..., courts must carefully factor into the ultimate equation not only the prerogatives of the individual accused, but the collective right of the community to vigorous law enforcement as well.

*Commonwealth v. Leaner*, 202 A.3d 749, 765–66 (Pa.Super. 2019)

(citation and brackets omitted).

Our Supreme Court has summarized Rule 600's requirements:

By the terms of Rule 600, the Commonwealth must bring a defendant to trial within 365 days from the date upon which a written criminal complaint is filed. Pa.R.Crim.P. 600(A)(2)(a). However, the Rule 600 run date may be adjusted pursuant to the computational directives set forth in Subsection (C) of the Rule. For purposes of the Rule 600 computation, "periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence." *Id.* 600(C)(1). "Any other periods of delay," including those caused by the defendant, "shall be excluded from the computation." *Id.* When considering a Rule 600 motion, the

- 6 -

court must identify each period of delay and attribute it to the responsible party, then adjust the 365-day tally to arrive at the latest date upon which the Commonwealth may try the defendant. Absent a demonstration of due diligence, establishing that the Commonwealth has done "everything reasonable within its power to guarantee that [the] trial begins on time," ***Commonwealth v. Matis***, 551 Pa. 220, 710 A.2d 12, 17 (1998), the Commonwealth's failure to bring the defendant to trial before the expiration of the Rule 600 time period constitutes grounds for dismissal of the charges with prejudice. ***See*** Pa.R.Crim.P. 600(D)(1).

***Commonwealth v. Barbour***, \_\_\_Pa.\_\_\_, 189 A.3d 944, 947 (2018).

The comment to Rule 600 provides the following with respect to the computation of time in which a defendant's trial must be commenced:

> For purposes of determining the time within which trial must be commenced pursuant to paragraph (A), paragraph (C)(1) makes it clear that any delay in the commencement of trial that is not attributable to the Commonwealth when the Commonwealth has exercised due diligence must be excluded from the computation of time. Thus, the inquiry for a judge in determining whether there is a violation of the time periods in paragraph (A) is whether the delay is caused solely by the Commonwealth when the Commonwealth has failed to exercise due diligence. If the delay occurred as the result of circumstances beyond the Commonwealth's control and despite its due diligence, the time is excluded. In determining whether the Commonwealth has exercised due diligence, the courts have explained that due diligence is fact-specific, to be determined case-by-case; it does not require perfect vigilance and punctilious care, but merely a showing the Commonwealth has put forth a reasonable effort.
>
> Delay in the time for trial that is attributable to the judiciary may be excluded from the computation of time. However, when the delay attributable to the court is so egregious that a constitutional right has been impaired, the court cannot be excused for postponing the defendant's trial and the delay will not be excluded.

Pa.R.Crim.P. 600, cmt. (citations, quotation marks and brackets omitted).

Appellant argues that the trial court erred in determining that the 285-day period between May 15, 2015 and February 24, 2016 was excludable delay.[1]  Instead, Appellant asserts that the delay period should have been attributed to Commonwealth as the defense requested a continuance for the Commonwealth to provide additional discovery, which it had failed to provide.

Our Supreme Court has held:

> the mere filing of a pretrial motion by a defendant does not automatically render him unavailable.  Rather, a defendant is only unavailable for trial if a delay in the commencement of trial is caused by the filing of the pretrial motion.  If a delay is created, in order to establish that the delay is excludable, the Commonwealth must demonstrate, by a preponderance of the evidence, that it exercised due diligence in opposing or responding to the pretrial motion.

*Commonwealth v. Hill*, 558 Pa. 238, 254–55, 736 A.2d 578, 587 (1999) (citations and footnote omitted).[2]

In a similar case, *Commonwealth v. Wallace*, 804 A.2d 675, 680 (Pa.Super. 2002), the appellant challenged the trial court's decision to find excludable a period of delay that occurred after the trial court granted a

---

[1] As Appellant does not argue that any other time periods were improperly ruled as excludable delay, we will limit our discussion to the specific time period that Appellant finds objectionable.

[2] The Supreme Court clarified that if a trial court "defers the consideration of a pretrial motion until trial, the time during which the pretrial motion is pending is not excludable from the [] calculation." *Hill*, 558 Pa. at 254–55, n.7, 736 A.2d at 587, n.7.

defense request for additional discovery.[3] This Court agreed that the eighty-four-day period was excludable delay as Appellant's motion placed an obligation on the prosecution that required the delay of the trial's commencement. This Court found that the prosecution had been duly diligent in making reasonable efforts to accommodate the defense's request for discovery; this Court noted that the prosecution had only been accused of failing to anticipate discovery, which the defense did not specifically request. Moreover, the trial court noted that no matter how diligent the Commonwealth was in providing the discovery to the defense, it could not have accelerated the next court date, which was set at the next court listing.

Moreover, our courts have recognized that while time attributable to the normal progression of a case is not "delay" pursuant to Rule 600, periods of judicial delay may be excluded from Rule 600 calculations. ***Commonwealth v. Mills***, 640 Pa. 118, 122, 162 A.3d 323, 325 (2017). Our Supreme Court has indicated that courts of original jurisdiction have discretion "to differentiate between time necessary to ordinary trial preparation and judicial delay arising out of the court's own scheduling concerns. Accordingly, where a trial-ready prosecutor must wait several months due to a court calendar,

---

[3] In ***Hill*** and ***Wallace***, the appellants raised speedy trial claims under the former Rule 1100. On April 1, 2001, Rule 1100 was amended and renumbered as Rule 600. "However, because much of the rule's substance remained consistent throughout the amendment, this Court has continued to apply our precedents interpreting former Rule 1100 to the analogous provisions of Rule 600, sometimes employing Rule 600 nomenclature to facilitate discussion of Rule 1100 precedents." ***Barbour***, ___Pa.___, 189 A.3d at 946.

the time should be treated as 'delay' for which the Commonwealth is not accountable." ***Id***. ***See also Commonwealth v. Holt***, 175 A.3d 1014, 1022 (Pa.Super. 2017) (finding an eleven-month delay to be excusable as conflicts with counsel and changes in judicial assignment caused to the court to reschedule the appellant's trial for the earliest possible date and the delay occurred despite the prosecution's due diligence); ***Commonwealth v. Preston***, 904 A.2d 1, 14 (Pa.Super. 2006) (*en banc*) (finding judicial delay was not attributable to the prosecution where "the Commonwealth was prepared to commence trial prior to the expiration of the mandatory period but the court was unavailable because of scheduling difficulties and the like") (citation omitted).

In this case, as Appellant was arrested on June 20, 2014, Appellant's mechanical run date was June 20, 2015. The record reveals that before the defense requested the continuance at issue, discovery was complete and Appellant's jury trial had been scheduled for May 18, 2015. However, it appears from the record that the defense requested additional discovery on May 15, 2015, which required the postponement of the trial's commencement. The only evidence of this request for a continuance is the docket entry on May 15, 2015, which states, "Defense request for continuance; additional discovery requested. Jury trial date relisted 2/29/16 … Time is ruled excludable. Earliest possible date is given."

Appellant did not file a Rule 600 motion until February 26, 2016. At the Rule 600 hearing held on February 6, 2017, counsel asked the trial court to

- 10 -

reverse its decision to find excludable delay occurred from May 15, 2015 to February 29, 2016. Counsel asserted that he was not present during the May 15, 2015 court date, but "believed that the continuance was given because [prior counsel (the Defender Association of Philadelphia)] requested discovery (DNA, gunshot residue test results, etc.) which should have been provided by [the] Commonwealth under the Rules of Criminal Procedure." Rule 600 motion, 2/26/16, at 2. Counsel admitted that "[prior] counsel was wrong not to object when the time was held to be excludable." *Id*.[4]

After reviewing the record, we agree with the trial court's decision to find the disputed delay to be excludable as Appellant's motion placed an obligation on the prosecution that required the delay of the trial's commencement to obtain discovery, which the defense had not requested until this point. The record does not contain any specific information as to the particular evidence that the defense sought to obtain.

Moreover, the trial court has indicated that the court's congested docket caused the delay, rather than the Commonwealth's lack of due diligence. The record confirms this point as the trial court granted the defense's continuance request and rescheduled trial for the earliest possible date, although the trial

---

[4] This Court has found that a defendant does not need to make an objection to preserve his speedy trial rights when his trial is scheduled beyond the run date "so long as he does not indicate that he approves of or accepts the delay." *Commonwealth v. Wallace*, 804 A.2d 675, 678 (Pa.Super. 2002).

was later continued for other reasons that the defense does not attribute to the Commonwealth. Thus, no matter how diligent the Commonwealth was in providing the allegedly missing discovery to the defense, it could not have brought Appellant to trial any faster as the next hearing was set for the earliest possible date.[5] As a result, Appellant's Rule 600 motion was properly denied.

Second, Appellant argues that the trial court erred in denying his suppression motion with respect to the validity of the search warrant that police obtained to investigate Appellant's home.

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

---

[5] Appellant cites **Commonwealth v. Preston**, 904 A.2d 1, 12 (Pa.Super. 2006), in arguing that Commonwealth cannot claim that delay in providing discovery was excusable if the delay is "due to either intentional or negligent acts, or merely stems from the prosecutor's inaction." As the record in this case contains no details as to what discovery the defense was seeking in requesting the continuance on May 15, 2015, Appellant has no basis to assert that the Commonwealth did not exert due diligence in providing the defense with this unknown discovery request.

*Commonwealth v. Mbewe*, 203 A.3d 983, 986 (Pa.Super. 2019) (citations and quotation marks omitted). In addition, "our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing." *Commonwealth v. Rapak*, 138 A.3d 666, 670 (Pa.Super. 2016) (*citing In re L.J.*, 622 Pa. 126, 79 A.3d 1073, 1087 (2013)).

Specifically, Appellant claims the search warrant was invalid because the affidavit of probable cause contained a material misstatement of fact. We are guided by the following principles:

> In *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the Supreme Court held a defendant may attack the issuance of a warrant if based on untruthful information. *Id.* at 171, 98 S.Ct. 2674. In requiring a truthful basis for the issuance of a warrant, the Court explained
>
> > [t]his does not mean "truthful" in the sense that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily.
>
> *Id*. at 165, 98 S.Ct. 2674. To succeed in attacking a warrant, a defendant must come forward with "allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." *Id.* at 171, 98 S.Ct. 2674.

*Commonwealth v. Gomolekoff*, 910 A.2d 710, 715 (Pa.Super. 2006) (quoting *United States v. Harvey,* 2 F.3d 1318, 1323 (3rd Cir. 1993)) (emphasis in original and brackets omitted). In *Gomolekoff*, this Court found that the trial court did not err in rejecting the appellant's claim that the search warrant was rendered invalid by inaccuracies in the affidavit of probable

cause, when the appellant did not offer any evidence to suggest that the detective who submitted the warrant application "made deliberately false statements, or statements, or made statements with a reckless disregard for the truth." *Gomolekoff*, 910 A.2d at 715.

Similarly, in this case, Appellant argues that the search warrant should have been invalidated because it incorrectly alleged that Laticj McKnight *saw* Appellant shoot Nesmith and Crosby. In reality, McKnight was upstairs in Nesmith's home when the shooting occurred downstairs; Nesmith ran upstairs and told McKnight that Appellant had fired shots at Crosby and Nesmith.

However, Appellant never alleged that the police made deliberately false statements or made statements with a reckless disregard for the truth in asserting that McKnight had witnessed the shooting. As noted in *Gomolekoff*, Appellant was required to make an offer of proof that the affidavit of probable cause contained a false statement that was deliberately or recklessly made. As a result, the trial court correctly denied Appellant's suppression claim on this basis.

Third, Appellant argued that his statement to police admitting that he shot Nesmith and Crosby should have been suppressed as he alleges that his confession was coerced. Specifically, Appellant asks this Court to find his confession was involuntary because he had been in custody for approximately nine hours, was deprived of food and drink, and had been under the influence of a controlled substance.

Our Supreme Court has set forth the following principles to review challenges to the voluntariness of a confession:

> The test for determining the voluntariness, and thus the admissibility, of an accused's statement is the totality of the circumstances surrounding the statement. ***The mere fact that there is some passage of time between when an accused is arrested and when he or she gives an inculpatory statement does not constitute grounds for suppression of the statement***. Numerous factors should be considered under a totality of the circumstances test to determine whether a statement was freely and voluntarily made: the means and duration of the interrogation, including whether questioning was repeated, prolonged, or accompanied by physical abuse or threats thereof; the length of the accused's detention prior to the confession; whether the accused was advised of his or her constitutional rights; the attitude exhibited by the police during the interrogation; the accused's physical and psychological state, including whether he or she was injured, ill, drugged, or intoxicated; the conditions attendant to the detention, including whether the accused was deprived of food, drink, sleep, or medical attention; the age, education, and intelligence of the accused; the experience of the accused with law enforcement and the criminal justice system; and any other factors which might serve to drain one's powers of resistance to suggestion and coercion.

***Commonwealth v. Martin***, 627 Pa. 623, 654–55, 101 A.3d 706, 724–25 (2014) (internal citations omitted) (emphasis added).

In the instant case, Appellant was arrested at approximately 9:00 a.m. However, as Appellant's behavior was erratic, his speech was incoherent, and he appeared to be under the influence of a controlled substance, the police did not take Appellant's statement while he was in this condition and instead held him in custody. N.T. 2/6/17, at 43. Meanwhile, the detective assigned to Appellant's case, Detective Orlando Ortiz, went to the hospital to speak the two victims in the shooting, and other officers processed the crime scene.

When Detective Ortiz returned to the station at 6:00 p.m., he offered Appellant food and drink and allowed him to go to the bathroom. Detective Ortiz noted that Appellant appeared to be in a "normal" condition and did not feel that Appellant was high or intoxicated at that point. *Id*. at 44. Detective Ortiz confirmed that in his eighteen years of experience as a police officer, he had come in contact with individuals under the influence of alcohol and drugs. Thereafter, Detective Ortiz provided Appellant with written *Miranda* warnings which he also read to Appellant. After Appellant signed this document to acknowledge he understood he was waiving his *Miranda* rights, he confessed to shooting Nesmith and Crosby.

In considering the totality of the circumstances surrounding Appellant's statement, we find no support for Appellant's claim that his confession was involuntary due to his alleged intoxication and the length of his time in police custody. The trial court found credible Detective Ortiz's testimony that Appellant was coherent, able to hold a conversation, and did not exhibit any signs of intoxication when he gave his confession. To the extent that Appellant raises other considerations (such as his level of intelligence and experience with the police), we note that the trial court did not consider such factors as Appellant did not raise these concerns at the suppression hearing. As noted above, we may only consider the evidentiary record created at the suppression hearing. *Rapak*, *supra*. Accordingly, we conclude that the trial court did not err in denying Appellant's suppression motion on this basis as well.

Lastly, Appellant claims the trial court abused its discretion in imposing a manifestly excessive sentence. The following principles apply to our consideration of this argument:

> Challenges to the discretionary aspects of sentencing do not entitle an appellant to an appeal as of right. Prior to reaching the merits of a discretionary sentencing issue[, w]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).
>
> When appealing the discretionary aspects of a sentence, an appellant must invoke the appellate court's jurisdiction by including in his brief a separate concise statement demonstrating that there is a substantial question as to the appropriateness of the sentence under the Sentencing Code. The requirement that an appellant separately set forth the reasons relied upon for allowance of appeal furthers the purpose evident in the Sentencing Code as a whole of limiting any challenges to the trial court's evaluation of the multitude of factors impinging on the sentencing decision to exceptional cases.

***Commonwealth v. Manivannan***, 186 A.3d 472, 489 (Pa.Super. 2018) (quotation marks, some citations, and emphasis omitted).

In this case, Appellant has: (1) timely filed a notice of appeal, (2) preserved the instant issue in a post-sentence motion, and (3) included a Rule 2119(f) statement in his brief. We therefore turn to the next requirement: whether the question raised by Appellant is a substantial question meriting our discretionary review.

> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

*Id.* (quotation marks and some citations omitted).

The only sentencing challenge that Appellant preserved before the trial court was his claim that there were "numerous other sentencing alternatives that could have been appropriately imposed in this case … [more specifically,] a county sentence."  Motion for Reconsideration of Sentence, 4/19/18, at 1.[6] This Court has held that "a generic claim that a sentence is excessive does not raise a substantial question for our review." ***Commonwealth v. Christine***, 78 A.3d 1, 10 (Pa.Super. 2013) (*en banc*), *aff'd*, 633 Pa. 389, 125 A.3d 394 (2015) (quoting ***Commonwealth v. Harvard***, 64 A.3d 690, 701 (Pa.Super. 2013) (stating, "a bald assertion that a sentence is excessive does not by itself raise a substantial question justifying this Court's review of the merits of the underlying claim")).

However, even assuming *arguendo* Appellant had raised a substantial question, his challenge to the discretionary aspects of his sentence is clearly without merit.  As Appellant's prior record score rendered him a repeat felony

---

[6] Appellant did attempt to raise other challenges to the discretionary aspects of his sentence for the first time in his appellate brief.  However, it is well-established that "[o]bjections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or in a motion to modify the sentence imposed." ***Commonwealth v. Griffin***, 65 A.3d 932, 935 (Pa.Super. 2013).

offender (RFEL) and his conviction for persons not to possess a firearm carried an offense gravity score (OGS) of 10, the guidelines provided a standard range of 72-84 months with an aggravated/mitigated range of 12 months. For Appellant's conviction for carrying a firearm without a license that carried an OGS of 9, the guidelines provided for a standard range of 60-72 months with an aggravated/mitigated range of 12 months. For Appellant's conviction for carrying a firearm in public in Philadelphia that carried an OGS of 5, the guidelines provided for a standard range of 24-36 months with an aggravated/mitigated range of 3 months. *See* 204 Pa.Code §§ 303.4, 303.15, § 303.16(a).

As noted above, the trial court sentenced Appellant to five to ten years' imprisonment for persons not to possess a firearm, two to five years' imprisonment for carrying a firearm without a license, and one to five years' imprisonment for carrying a firearm in public in Philadelphia. Thus, the trial court imposed individual sentences that fell in the mitigated range of the sentencing guidelines or were completely below the recommended guideline ranges. As such, we cannot find the trial court abused its discretion in imposing these sentences.

For all the foregoing reasons, we affirm.

Judgment of sentence affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date: 6/21/2019*