J-S21040-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :   IN THE SUPERIOR COURT OF
:          PENNSYLVANIA
:
v.         :
:
:
JONATHAN M. KRAMER        :
:
Appellant    :   No. 1539 MDA 2022

Appeal from the Judgment of Sentence Entered October 17, 2022
In the Court of Common Pleas of Schuylkill County Criminal Division at
No(s):  CP-54-CR-0000574-2022

BEFORE:   BOWES, J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BOWES, J.:        **FILED: NOVEMBER 3, 2023**

Jonathan M. Kramer appeals from the aggregate judgment of sentence of eighteen to thirty-six months of incarceration, imposed following his jury convictions for flight to avoid apprehension and related offenses.  We affirm.

In the early afternoon of December 27, 2021, Detective Michael Dissinger and Corporal Mark Vandermartin of the Pine Grove Police Department arrived at Appellant's house to serve a felony arrest warrant that they had been trying to serve for months.  The detective parked at one end of the road and the corporal parked at the other.  Appellant's vehicle was in the driveway but they did not see Appellant.  After leaving for a lunch break, they returned to the house to find Appellant's vehicle gone.  The officers took up the same positions on the street to await Appellant's return.

_____

[*] Retired Senior Judge assigned to the Superior Court.

Eventually, Appellant's truck approached. Appellant had a front-seat passenger, John Siegel. When Appellant saw Detective Dissinger's vehicle, he swerved away and did not continue towards the house. Detective Dissinger pursued and ultimately activated his emergency lights and sirens to initiate a stop. After announcing "[c]at and mouse" to Mr. Siegel, Appellant drove away at a high rate of speed, at least double the posted speed limit, for 200 yards. *See* N.T. Trial, 8/23/22, at 115. Appellant then drove off-road through a grassy area and into a grocery store parking lot, where pedestrians were returning to their vehicles. The officers blocked Appellant's truck with their vehicles and successfully took him into custody. They then learned that Mr. Siegel also had a warrant for his arrest, so he was taken into custody as well. Within Appellant's truck, the officers recovered methamphetamine, marijuana, and a marijuana grinder. Based on the foregoing, Appellant was charged with various flight and drug-related charges, as well as summary traffic offenses.

Appellant proceeded to a jury trial on August 23, 2022. Of relevance, the Commonwealth presented testimony, over Appellant's objection, from Detective Dissinger that he had reviewed police reports indicating that Appellant previously called the police department to ascertain whether he had any outstanding warrants. Mr. Siegel also testified, without objection, that Appellant had told him prior to the incident that the police were looking for him. Appellant testified in his own defense. At the conclusion of trial, the jury found Appellant guilty of one count each of flight to avoid apprehension,

- 2 -

fleeing or attempting to elude police, recklessly endangering another person, and possession of drug paraphernalia, as well as two counts of possession of a controlled substance.[1]  The court found him guilty of two summary traffic violations.  Thereafter, he was sentenced as indicated above.

Appellant filed a timely notice of appeal.  Both Appellant and the trial court complied with Pa.R.A.P. 1925.[2]  Appellant presents a single issue for our consideration:  "Did the trial court err in allowing [Detective] Dissinger to testify to the contents of police reports prepared by other officers indicating that [Appellant] called the Pine Grove police station to inquire about warrants?"  Appellant's brief at 3 (cleaned up).

---

[1] The jury hung on two additional reckless endangerment counts.

[2] Technically, the certified record indicates that Appellant filed his concise statement one day late.  To wit, on December 2, 2022, the trial court granted Appellant's request for an extension to file a Rule 1925(b) statement until twenty-one days following the docket entry indicating that the transcripts had been filed.  The last docket entry for transcript filings was December 1, 2022, making his statement due by December 22, 2022.  Appellant filed his statement on December 23, 2022.  Nonetheless, as the trial court did not deem the statement untimely and addressed the issues raised therein, we proceed as if the statement had been timely filed.  **See** Pa.R.A.P. 1925(c)(3) ("If an appellant represented by counsel in a criminal case was ordered to file and serve a Statement and . . . untimely filed or served a Statement, such that the appellate court is convinced that counsel has been *per se* ineffective, and the trial court did not file an opinion, the appellate court may remand for appointment of new counsel, the filing or service of a Statement *nunc pro tunc*, and the preparation and filing of an opinion by the judge."); **Commonwealth v. Andrews**, 213 A.3d 1004, 1010 (Pa.Super. 2019) (declining to find waiver or remand for a Rule 1925(a) opinion where "the trial court did not comment on the untimely filing of [the defendant's] Rule 1925(b) statement and, in fact, it addressed all of the issues raised therein").

We consider this issue pursuant to the following legal principles. "Our standard of review for evidentiary rulings, including the admission of hearsay, is abuse of discretion." *Commonwealth v. Luster*, 234 A.3d 836, 838 (Pa.Super. 2020) (cleaned up). "Hearsay is an out-of-court statement offered for the truth of the matter asserted. Hearsay generally is inadmissible unless it falls within one of the exceptions to the hearsay rule delineated in the Pennsylvania Rules of Evidence." *Commonwealth v. Rivera*, 238 A.3d 482, 492 (Pa.Super. 2020) (cleaned up).

Appellant argues that Detective Dissinger's testimony about the contents of the police report was inadmissible hearsay because: (1) the report was not produced; (2) Detective Dissinger did not recall the date of the report, when he read it, or if he read it before the incident; and (3) the Commonwealth did not call the author of the report as a witness. *See* Appellant's brief at 9. The Commonwealth counters that it was not hearsay because it was not offered for the truth of the matter asserted, but to establish Appellant's state of mind. *See* Commonwealth's brief at 7.

The relevant exchange between the Commonwealth and Detective Dissinger occurred thusly:

Q. Do you have personal knowledge of whether or not [Appellant] called the Pine Grove Police Department?

A. I did. I read through reports –

[Defense counsel]: Objection. Hearsay.

[Commonwealth]: I'm asking if he has personal knowledge, if he ever called and asking what he said. I'm not offering it for the truth of the matter.

THE COURT: Objection overruled. Go ahead. You can answer the question.

A. Part of our duties every day is to read reports to find out what happened prior to our shift. And I have read reports that [Appellant] has called our police department inquiring about whether he was wanted or not. And so that was in a report.

[Defense counsel]: I'd like to renew my objection, Your Honor.

THE COURT: All right. The objection is granted – the objection is noted, but it's overruled.

N.T. Trial, 8/23/22, at 46-47.

Based on the foregoing, we readily conclude that Detective Dissinger's testimony regarding the police report constituted hearsay. The police report was an out-of-court statement, and the truth of the matter asserted in the report was that Appellant called the police department to inquire about his wanted status. Since the Commonwealth called Detective Dissinger to testify to this fact, and not the author of the report, Appellant was deprived of the opportunity to test this evidence. Indeed, on cross-examination, Detective Dissinger was unable to offer any additional information regarding the report. **See id**. at 57-58. The Commonwealth did not offer the testimony pursuant to any exception to the hearsay rule, and we discern no applicable exception upon review of the certified record. Accordingly, the trial court erred in ruling that the testimony was not inadmissible hearsay.

Our analysis does not end here, however, as we may nevertheless affirm if the error was harmless. "Under the harmless error doctrine, we must vacate the order on review to correct the error unless we are convinced beyond a reasonable doubt that the error is harmless." *Commonwealth v. Murray*, 248 A.3d 557, 576 (Pa.Super. 2021) (cleaned up).

> [A]n error cannot be held harmless unless the appellate court determines that the error could not have contributed to the verdict. Whenever there is a reasonable possibility that an error might have contributed to the conviction, the error is not harmless. The Commonwealth bears the burden of proving that the error was harmless beyond a reasonable doubt.
>
> Harmless error exists where: (1) the error did not prejudice the defendant or the prejudice was *de minimis*; (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

*Commonwealth v. Fitzpatrick*, 255 A.3d 452, 483 (Pa. 2021) (cleaned up).

"[W]hen reviewing for harmless error, the appellate court considers only the uncontradicted evidence and, having done so, proceeds to determine whether that body of uncontradicted evidence was so overwhelming that the erroneous admission of the evidence could not have impacted the verdict." *Id*. at 470 (cleaned up). Finally, we observe that the harmless error "doctrine reflects the reality that the accused is entitled to a fair trial, not a perfect trial." *Commonwealth v. Wilson*, 286 A.3d 1288, 1300 (Pa.Super. 2022) (cleaned up).

- 6 -

The Commonwealth argues in the alternative that, even if the evidence was hearsay, its admission was harmless because the testimony from Mr. Siegel that Appellant knew the police were looking for him, "coupled with Appellant's actions of flight upon making contact with police, established that he evaded police for the purpose of avoiding apprehension." Commonwealth's brief at 8-9. Likewise, the trial court concluded that "the jury's verdict was based upon solid evidence and the reasonable inferences deduced therefrom, and that any error alleged was harmless since Mr. Siegel confirmed Appellant's knowledge of the outstanding warrants." Trial Court Opinion, 1/10/23, at 5. While not so artfully crafted, we deem these averments as invoking the second and third types of harmless error.[3]

Our review of the certified record confirms that the testimony regarding Appellant's inquiry to police as to his wanted status was merely cumulative of other evidence demonstrating his intent to flee from police to avoid

---

[3] Respectfully, insofar as the learned dissent's discussion of the applicable law references the concerns surrounding this Court addressing harmless error *sua sponte* and how that deprives defendants of the opportunity to respond, that discussion is inapt to the case presently before us. **See** Dissent at 2-4. Instantly, the trial court indicated that "any error alleged was harmless" in its Rule 1925(a) opinion, referring to Mr. Siegel's testimony as to Appellant's awareness that the police were attempting to apprehend him. **See** Trial Court Opinion, 1/10/23, at 5. Appellant had the opportunity to respond in his brief to the court's finding of harmless error but declined to do so. Nonetheless, the Commonwealth addressed harmless error in its brief. **See** Commonwealth's brief at 7-9.

- 7 -

apprehension.[4] *See Fitzpatrick*, *supra* at 483. Specifically, that evidence established that Appellant: (1) told Mr. Siegel that the police were looking for him; (2) only moved his vehicle when the police were not parked outside his house; (3) drove away from the parked police vehicles instead of continuing on his apparent route home; (4) sped away when Detective Dissinger attempted to stop him; (5) told Mr. Siegel that they were engaging in a game of "cat and mouse[;]" and (6) drove through the grass into a crowded parking lot before being blocked by police vehicles and arrested at gunpoint. *See* N.T. Trial 8/23/22, at 115. It could not be more obvious that Appellant was employing drastic measures on that day to avoid being "seiz[ed] in the name of the law[.]" APPREHENSION, Black's Law Dictionary (11th ed. 2019). Thus, we hold that the "uncontradicted evidence was so overwhelming that the erroneous admission of the evidence could not have impacted the verdict." *Fitzpatrick*, *supra* at 470. Since we cannot conclude that Appellant was deprived of a fair trial, we determine that the Commonwealth has met its

_____

[4] Instead of characterizing the erroneously admitted testimony as demonstrating Appellant's inquiry into his wanted status, the dissent finds there is no other substantially similar evidence because Mr. Siegel's testimony did not reflect that Appellant "called the police and found out he had a warrant for his arrest." Dissent at 7 (citation omitted). However, neither did Detective Dissinger's testimony; his testimony was only that he read a report that Appellant had called the police station to inquire about his wanted status, not what the responding police officer told Appellant. Therefore, we find the dissent's distinction in this regard unpersuasive.

burden of establishing that the admission of this hearsay evidence was harmless error.

Since the admission of the hearsay evidence constituted harmless error, we affirm Appellant's judgment of sentence.[5]

_____

[5] Respectfully, contrary to the dissent's accusation that we are conflating sufficiency standards with those applicable to harmless error analysis, we remind the dissent that the harmless error standard requires us "to determine whether that body of uncontradicted evidence was so overwhelming that the erroneous admission of the evidence could not have impacted the verdict." **Commonwealth v. Fitzpatrick**, 255 A.3d 452, 470 (Pa. 2021) (cleaned up). Thus, part of determining whether a piece of testimony impacted the verdict necessarily implicates the elements of the crime charged. Moreover, it is the dissent that contends that knowledge of a warrant is "central to conviction" and therefore cannot constitute harmless error. **See** Dissent at 10.

In considering whether the evidence could have impacted the verdict, we again reject the dissent's characterization of the tainted evidence. At no point did Detective Dissinger testify to Appellant's knowledge about an outstanding warrant. What he testified to was that Appellant called the police station to inquire whether there were any warrants. Since Detective Dissinger could not identify when Appellant called the station, he likewise would not have been able to state whether the warrant had been filed at that point and, furthermore, explicitly did not testify to what the responding officer told Appellant in answering his question. In short, it is mere speculation that Appellant was told that there was an outstanding warrant. As discussed, the actual evidence was that Appellant called the police station to see whether he was wanted, which, as noted, we find substantially similar and cumulative to the testimony of Mr. Siegel that Appellant told him the police were looking for him.

Second, even if Detective Dissinger had testified as to the response that Appellant received, and that response indicated that there was an outstanding warrant, Appellant's specific knowledge of an outstanding warrant was not an element of the crime, and thus not "central to conviction," as the dissent contends, and therefore would not preclude a finding of harmless error. The Crimes Code defines flight to avoid apprehension in the following manner:

*(Footnote Continued Next Page)*

> A person who willfully conceals himself or moves or travels within or outside this Commonwealth with the intent to avoid apprehension, trial or punishment commits a felony of the third degree when the crime which he has been charged with or has been convicted of is a felony and commits a misdemeanor of the second degree when the crime which he has been charged with or has been convicted of is a misdemeanor.

18 Pa.C.S. § 5126(a). The Suggested Standard Jury Instructions pertaining to this crime provide as follows:

> 1. The defendant has been charged with flight to avoid apprehension. To find the defendant guilty of this offense, you must find that the following elements have been proven beyond a reasonable doubt:
>
> *First*, that the defendant willfully [concealed] [moved] [traveled] within or outside the Commonwealth;
>
> *Second*, that the defendant did so with the intent to avoid apprehension, trial, or punishment; and
>
> *Third*, that the crime with which the defendant was charged or convicted was:
>
> [a. a felony; [or]
>
> b. a misdemeanor.]

Pa. SSJI (Crim), § 15.5126.

Neither the statute criminalizing flight to avoid apprehension nor the probative jury instruction includes as an element the defendant's awareness of an arrest warrant. Indeed, we previously rejected an argument seeking to impose such an element, concluding that the defendant had "fail[ed] to provide any legal support for grafting such a requirement onto the statute." *See* ***Commonwealth v. Thompson***, 217 A.3d 402, 2019 WL 2121513, at *2 (Pa.Super. 2019) (non-precedential decision) (citation omitted).

We reiterated that holding in the context of a sufficiency challenge in ***Commonwealth v. Bronson***, 296 A.3d 579, 2023 WL 2360866 (Pa.Super.
*(Footnote Continued Next Page)*

- 10 -

2023) (non-precedential decision). There, Bronson contended that the evidence was insufficient to support his conviction for flight to avoid apprehension because "in order to establish intent, the Commonwealth was required to prove that [he] knew that there was an active or outstanding warrant for his arrest at the time he fled from police." *Id*. at *4 (citation omitted). We rejected Bronson's argument, reasoning as follows:

> [T]he plain language of Section 5126 does not require proof that a defendant knew that he had an outstanding arrest warrant at the time he fled from police.[6] *See* 18 Pa.C.S. § 5126(a); *see also Commonwealth v. Steffy*, 36 A.3d 1109, 1111-12 (Pa.Super. 2012); *Thompson*, *supra* at *2-3. In any event, the circumstances of [Bronson's] flight clearly indicate that he intended to evade police in order to avoid apprehension. As this Court explained in *Thompson*, while a person may run from the police for a number of reasons, it is within the province of the fact-finder to accept or reject these alternate theories, and conclude that the defendant fled to avoid apprehension on his outstanding warrants. *See Thompson*, *supra* at *3; *see also Commonwealth v. Palmer*, 192 A.3d 85, 89 (Pa.Super. 2018) (noting that the Commonwealth may sustain its burden of proving every element of the crime using wholly circumstantial evidence).
>
> _____
>
> [6] We recognize that several decisions by this Court involve [§] 5126 convictions in which a defendant flees from police after being informed about an active warrant. *See e.g. Steffy*, 36 A.3d at 1110; *Commonwealth v. Baker*, 225 A.3d 1183 (Pa.Super. 2019) (non-precedential decision); *Commonwealth v. Shroyer*, 240 A.3d 177 (Pa.Super. 2020) (non-precedential decision). However, as discussed, the Commonwealth is not required to prove that a defendant knew he had an active warrant in order to sustain a conviction under [§] 5126(a). Therefore, to the extent [Bronson] relies on our prior decisions in support of that proposition, his reliance is misplaced.

*Id*. at *5 (some citations altered).

It is beyond the purview of this Court to impose an element on a crime that is not contemplated by the statute criminalizing the conduct. Based on the foregoing, we conclude that Appellant's specific awareness of the arrest

*(Footnote Continued Next Page)*

- 11 -

Judgment of sentence affirmed.

Judge Nichols concurs in the result.

Judge Pellegrini files a Dissenting Memorandum.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/03/2023

---

warrant was not a material element of the crime of flight to avoid apprehension. Accordingly, we conclude that the admission of testimony regarding a police report where Appellant had asked about the existence of an arrest warrant was not prejudicial. In short, the error was harmless because the officer's testimony did not "contribute . . . to the verdict." *Fitzpatrick*, *supra* at 483.