J-S05001-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
CHRISTOPHER FERRANTE :
:
Appellant : No. 2892 EDA 2023

Appeal from the Judgment of Sentence Entered October 4, 2023
In the Court of Common Pleas of Northampton County Criminal Division
at No(s): CP-48-CR-0000858-2021

BEFORE: BOWES, J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BOWES, J.: **FILED APRIL 1, 2025**

Christopher Ferrante appeals from the aggregate judgment of sentence of five to ten years of incarceration imposed upon his convictions for possession with intent to deliver ("PWID") fentanyl, possession of the same, and criminal use of a communication facility. We affirm.

On December 24, 2020, victim Michael Racciato sent multiple text messages to Appellant to purchase fentanyl after his release from a drug rehabilitation facility. Appellant and the victim regularly orchestrated drug transactions via text messages or phone calls, and the victim would generally purchase three to five bags of fentanyl at a time. Appellant provided the victim with his usual supply that afternoon in a Walmart parking lot. Shortly

_____

[*] Former Justice specially assigned to the Superior Court.

thereafter, patrons at the store reported a heavily intoxicated male wandering around, later identified as the victim. After he was taken to the hospital and treated for an overdose, Appellant picked the victim up upon discharge and took him to his car in the Walmart parking lot, where he again sold him three to five bags of fentanyl.

The Colonial Regional Police Department was dispatched the following morning for a report of an unresponsive male in his vehicle at the Towne Place Hotel in Northampton County. Police discovered the victim deceased in his car with a needle sticking out of his arm. Three bags of a white substance containing fentanyl were discovered on his person, and an autopsy report confirmed that he died from intoxication of fentanyl, methadone, Atarax, Rompun, and Benadryl.

Detective Michael Melinsky of the Colonial Regional Police Department and Detective John Casciano of the Northampton County Detective Bureau investigated the victim's death and identified Appellant as a person of interest. He had recently been arrested for possession of a controlled substance and subsequently became a confidential informant for Detective David Howells of the Allentown Police Department. In this role, Appellant made several controlled drug purchases.

Based upon his connection to Appellant, Detectives Melinsky and Casciano reached out to Detective Howells to coordinate a meeting with Appellant. The three officers met in a parking lot in Allentown, wearing plain

clothes and not openly carrying their firearms. Appellant arrived shortly thereafter and agreed to participate in an interview after meeting the two other officers. He drove himself to the Allentown Police Station and the detectives followed. During the interview, Appellant was never handcuffed, was told that he was not under arrest, and was repeatedly reminded that he could leave at any time. The door remained unlocked. No officer read Appellant his **Miranda** rights, and he declined to have the interview recorded. However, he agreed to have his cell phone forensically examined. Appellant spoke openly with the detectives about his interactions with the victim and confirmed the above facts regarding their drug transactions.

Approximately one month after the interview, Appellant was arrested and charged with one count of drug delivery resulting in death, and two counts each of PWID fentanyl, criminal use of a communication facility, and possession of fentanyl. Appellant filed a pre-trial motion for relief seeking, *inter alia*, suppression of his interview statements, which the court denied after a hearing.[1]

The matter was scheduled for a jury trial, but was delayed after the court granted a request for a continuance from the Commonwealth.

_____

[1] At the suppression hearing, Detectives Howells, Casciano, and Melinsky testified to the circumstances surrounding the interview detailed hereinabove. **See** N.T. Evidentiary Hearing, 2/8/22, at 18-23, 71-78, 132-139. They also explained that they informed Appellant that no offers were being made in exchange for his participation. **Id**.

Thereafter, the Commonwealth sought a second continuance to secure a new expert witness to interpret the data from the victim's toxicology report. The court denied the second request after a hearing and concluded that it was not necessary for the Commonwealth to obtain a different expert, and it did not act with due diligence in ascertaining the necessity of one. The Commonwealth filed an interlocutory appeal pursuant to Pa.R.A.P. 311(d) on May 25, 2022, and this Court affirmed the trial court's order. **See Commonwealth v. Ferrante**, 297 A.3d 740, 2023 WL 3034356 (Pa.Super. 2023) (non-precedential decision).

Before this Court issued its ruling on the Commonwealth's interlocutory appeal, Appellant filed a motion to dismiss pursuant to Pa.R.Crim.P. 600. He argued that the Commonwealth did not act with due diligence in filing the appeal, and thus the period that the case was with this Court caused his trial to be scheduled beyond the 365-day deadline. The court denied his motion through an order and opinion.

After the case was remanded on May 25, 2023, the matter proceeded to a jury trial on July 10, 2023, wherein Detectives Howells, Casciano, and Melinsky established the above facts. The Commonwealth also introduced the text messages between Appellant and the victim from December 24, 2020, and a record of several attempted phone calls from the victim to Appellant on the day in question. Appellant objected to the detective's testimony regarding Appellant's interview statements, as he claimed the Commonwealth did not

establish the *corpus delicti* of Appellant's first sale of drugs to the victim, which the court overruled.

A jury convicted Appellant of one count each of PWID fentanyl, criminal use of a communication facility, and possession of fentanyl.[2] The court sentenced him to the aforementioned sentence, and this timely appeal followed. Appellant filed a statement compliant with Pa.R.A.P. 1925(b), and in lieu of an opinion pursuant to Rule 1925(a), the trial court pointed us to its previous opinions on Appellant's pre-trial motion and his Rule 600 motion.

Appellant raises the following issues for our review:

1.      Did the trial court err and abuse its discretion when it denied Appellant's motion to dismiss pursuant to Pennsylvania Rule of Criminal Procedure 600?

2.      Did the trial court err and abuse its discretion when it permitted the Commonwealth to introduce Appellant's January 6, 2021 statement at trial before establishing the *corpus delicti* as to the first alleged delivery occurring in the afternoon of December 24, 2020?

3.      Did the trial court err and abuse its discretion when it denied Appellant's application to suppress his statement made on January 6, 2021?

Appellant's brief at 7.

Appellant's first challenge implicates Rule 600, which protects a criminal defendant's right to a speedy trial and society's right to effective prosecution. *See Commonwealth v. Graves*, 328 A.3d 1005, 1008 (Pa.Super. 2024). In

_____

[2] The jury found Appellant not guilty of the remaining offenses.

reviewing a court's decision on a Rule 600 motion, "our scope of review is limited to the trial court's findings and the evidence on the record, viewed in the light most favorable to the prevailing party." ***Id***. (cleaned up). Our standard of review is for an abuse of discretion, which is found only where: "(1) the trial court committed an error of law; (2) the court exercised its judgment in a manifestly unreasonable manner; or (3) the court's decision was the result of partiality, prejudice, bias or ill-will, as shown by evidence on the record." ***Commonwealth v. Anderson***, 327 A.3d 273, 289 (Pa.Super. 2024) (cleaned up).

Rule 600 provides, in relevant part:

**(A) Commencement of Trial; Time for Trial**

. . . .

(2) Trial shall commence within the following time periods.

(a) Trial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed.

. . . .

**(C) Computation of Time**

(1) For purposes of paragraph (A), periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence. Any other periods of delay shall be excluded from the computation.

. . . .

(3)(a) When a judge or issuing authority grants or denies a continuance:

(i) the issuing authority shall record the identity of the party requesting the continuance and the reasons for granting or denying the continuance; and

(ii) the judge shall record the identity of the party requesting the continuance and the reasons for granting or denying the continuance. The judge also shall record to which party the period of delay caused by the continuance shall be attributed, and whether the time will be included in or excluded from the computation of the time within which trial must commence in accordance with this rule.

. . . .

**(D) Remedies**

(1) When a defendant has not been brought to trial within the time periods set forth in paragraph (A), at any time before trial, the defendant's attorney, or the defendant if unrepresented, may file a written motion requesting that the charges be dismissed with prejudice on the ground that this rule has been violated.

Pa.R.Crim.P. 600. The Commonwealth has the burden to prove by a preponderance of the evidence that "it acted with due diligence throughout the proceedings." *Commonwealth v. Dunmore*, 324 A.3d 1, 5 (Pa.Super. 2024).

Appellant maintains that "there is no dispute that the trial did not commence within the mechanical run date" of February 8, 2022, which is one year after the underlying complaint was filed. *See* Appellant's brief at 21-22. He insists that because the Commonwealth did not exercise due diligence "from the date it filed the appeal, May 25, 2022, through the date that the case was remitted back to the trial court on May 25, 2023[,]" that one-year

- 7 -

period should have been included in the court's calculation of the adjusted run date. *Id*. at 25-26. Specifically, Appellant points to the fact that the Commonwealth "received [an] additional toxicology report" while the appeal was pending, and thus it should have withdrawn the appeal and proceeded to trial. *Id*. Since the Commonwealth did not do so, Appellant maintains the year that the appeal was under review was includable pursuant to Rule 600. *Id*. at 26.

In rejecting this contention, the trial court first acknowledged that Appellant's mechanical run date was February 8, 2022. Then, it found 204 days of excludable time due to the COVID-19 pandemic,[3] and an additional 110 excludable days from a Rule 600 waiver by the defense, arriving at an adjusted run date of December 19, 2022. The court additionally determined that the 365 days that the matter was on appeal to this Court was excludable, and calculated the final adjusted run date to be December 19, 2023, approximately seven months after Appellant filed his motion to dismiss.

The court summarized that "[i]t is clear that the 365-day deadline embedded in Rule 600 has not elapsed unless the [c]ourt treats the duration of the Commonwealth's appeal to the Superior Court as countable time." Trial Court Opinion, 7/5/23, at 4. It concluded, however, that since the Commonwealth certified with its appeal that the order denying its request for

_____

[3] Appellant does not challenge this excludable time due to the pandemic.

- 8 -

a continuance obstructed its prosecution of Appellant, the one-year period where the appeal was with this Court was excludable. *Id*. at 5-6.

In reviewing Appellant's challenge to the trial court's ruling, we find this Court's decision in **Commonwealth v. Risoldi**, 238 A.3d 434 (Pa.Super. 2020), to be instructive. There, we held that "the Commonwealth need not be successful in its interlocutory appeal to establish due diligence for the purposes of Rule 600." **Id**. at 452. The **Risoldi** Court instead explained that "a pretrial appeal by the Commonwealth can serve as a proper basis to extend the period for commencement of trial pursuant to Rule 600, such as when the Commonwealth certifies that a trial court's . . . order has substantially handicapped the prosecution." **Id**. (cleaned up). Therefore, "[e]ven though the Commonwealth was unsuccessful on appeal" in that matter, this did not equate to lack of due diligence in filing the appeal where the Commonwealth certified that the court's order impeded its prosecution. **Id**. Further, there was "no indication in the record that [it] took the appeal in bad faith or as a means to delay trial." **Id**. at 453.

Appellant's argument holds no weight pursuant to **Risoldi** where, as here, the Commonwealth certified that the court's denial of its second motion for a continuance impaired its prosecution of Appellant. **See** Notice of Appeal, 5/25/22. The Commonwealth's lack of success on appeal does not create an assumption of an absence of due diligence in filing that appeal. **See Risoldi**, 238 A.3d at 452. Although Appellant maintains that the Commonwealth acted

in bad faith or without diligence during the appeal's pendency because it received a new toxicology report, the Commonwealth sought the second continuance to obtain a new expert to interpret the results, not a new report. Without additional evidence of the Commonwealth pursuing the appeal in "bad faith or as a means to delay trial[,]" the appeal period is excludable for purposes of Rule 600. *Id*. at 453. Accordingly, the court properly concluded that the one-year pendency of the Commonwealth's appeal was excludable pursuant to Rule 600. Its calculation of Appellant's final adjusted run date is also supported by the record, and since Appellant was brought to trial before that date, he is not entitled to relief on this basis.

Appellant next assails the introduction of his interview statements where he claims that the Commonwealth did not establish the *corpus delicti* of his first sale to the victim on December 24. We review the court's decision to admit evidence for an abuse of discretion. *See Commonwealth v. Dewald*, 317 A.3d 1020, 1035 (Pa.Super. 2024).

The *corpus delicti* rule "places the burden on the prosecution to establish that a crime has actually occurred before a confession or admission of the accused connecting him to the crime can be admitted." *Commonwealth v. Murray*, 174 A.3d 1147, 1154 (Pa.Super. 2017) (cleaned up). Establishing the *corpus delicti* is a two-step process:

> The first step concerns the trial judge's admission of the accused's statements and the second step concerns the fact finder's consideration of those statements. In order for the statement to be admitted, the Commonwealth must prove the *corpus delicti* by

- 10 -

a preponderance of the evidence. In order for the statement to be considered by the fact finder, the Commonwealth must establish the *corpus delicti* beyond a reasonable doubt.

*Id*. (cleaned up). The rule "seeks to ensure that the Commonwealth has established the occurrence of a crime before introducing the statements or confessions of the accused to demonstrate that the accused committed the crime[,]" but "should not be viewed as a condition precedent to the admissibility of the statements or confessions of the accused." ***Dewald***, 317 A.3d at 1035 (cleaned up).

Appellant asserts that the Commonwealth failed to prove the *corpus delicti* of his first sale of fentanyl to the victim on December 24 where it only introduced "a series of text messages and records of phone calls." Appellant's brief at 28-19. He states that the "text messages reveal [the victim]'s desire to meet with Appellant for the purchase of what the Commonwealth asserts was a controlled substance," but "there [wa]s no proof that, in fact, [the victim] and Appellant met up earlier that day." *Id*. at 29.

At trial, the court overruled Appellant's objection to the Commonwealth's introduction of his interview statements. It concluded that the Commonwealth had met its burden where the text messages served as "circumstantial evidence to establish the fact that the [victim] contacted [Appellant]" to exchange fentanyl on the day in question. N.T. Trial Vol. IV, 7/13/23, at 79-80.

We discern no abuse of discretion in the court's decision to admit testimony relating to Appellant's interview statements. As Appellant acknowledges, before this testimony, the Commonwealth introduced several text messages and attempted phone calls between the victim and Appellant, establishing that the parties regularly orchestrated fentanyl transactions by text message, as they did on December 24. The victim repeatedly expressed his desire to purchase drugs from Appellant in those messages, with responses from Appellant indicating a desire to sell. Hence, the Commonwealth established through circumstantial evidence the *corpus delicti* of Appellant selling the victim fentanyl, and this argument affords no relief.

Appellant lastly challenges the court's denial of his motion to suppress his interview statements, as he claims they were made involuntarily. Our review of a court's denial of a suppression motion is as follows:

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the [suppression hearing] and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. The suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. Phillips*, 327 A.3d 1236, 1241 (Pa.Super. 2024) (cleaned up).

To trigger *Miranda* warnings, "there must be both custody and interrogation." *Commonwealth v. Harper*, 230 A.3d 1231, 1237 (Pa.Super. 2020) (cleaned up). A custodial interrogation will only be found where "the officer's show of authority leads the person to believe that he was not free to decline the officer's request, or otherwise terminate the encounter." *Id*. In determining whether a statement was voluntary, the Court must analyze the totality of the circumstances, including:

> The means and duration of the interrogation, including whether questioning was repeated, prolonged, or accompanied by physical abuse or threats thereof; the length of the accused's detention prior to the confession; whether the accused was advised of his or her constitutional rights; the attitude exhibited by the police during the interrogation; the accused's physical and psychological state, including whether he or she was injured, ill, drugged, or intoxicated; the conditions attendant to the detention, including whether the accused was deprived of food, drink, sleep, or medical attention; the age, education, and intelligence of the accused; the experience of the accused with law enforcement and the criminal justice system; and any other factors which might serve to drain one's powers of resistance to suggestion and coercion.

*Commonwealth v. Andrews*, 213 A.3d 1004, 1015 (Pa.Super. 2019) (cleaned up).

Appellant contends that since he was a confidential informant for Detective Howells "to gain favor with the Commonwealth regarding his own pending criminal charges[,]" he was "reliant upon Detective Howells for his liberty and freedom." Appellant's brief at 31-32. Phrased another way,

Appellant claims that he felt compelled to assist the detective, and the request for him to participate in the interview was the "functional equivalent of a detention[,] and **Miranda** warnings should have been administered." **Id**.

The trial court reviewed the circumstances surrounding Appellant's confession thusly:

> The record demonstrates that [Appellant] drove to meet with the officers at a parking lot in Allentown and then agreed to drive to the Allentown Police Station to continue the discussion with them. [Appellant] drove his own vehicle to the police station. He was never placed under arrest or physically restrained, spoke with officers in an interview room with an open door, and was specifically informed that he was free to cut the interview short and leave at any time. [Appellant] was questioned for approximately two hours, which is not an excessive amount of time. [Appellant] left at the conclusion of the interview by walking out of the police station to his vehicle and driving away. These facts all demonstrate the voluntariness of [Appellant]'s cooperation and the noncustodial nature of the interview.
>
> [Appellant]'s other argument with regard to the voluntariness of his statements is that, although he was never physically placed in custody, he was nevertheless forced to comply with the officer's requests because of his status as a confidential informant. . . . The facts here do not show that [Appellant] was promised anything in return for his confession. [Appellant] may have broadly believed that cooperation with police was likely to be beneficial with regard to his pending drug charges, but this is not a particularly remarkable belief[,] and the facts of record do not demonstrate that this belief was premised upon impermissible mental manipulation by the officers.
>
> . . . . We also note that [Appellant] specifically declined to allow the officers to make an audiovisual recording of the interview. [Appellant]'s refusal to allow the interview to be recorded indicates that he did not feel coerced or compelled to agree to anything that the officers asked of him and serves as a clear example of [Appellant]'s exercise of independent decision-making at the time of his questioning.

- 14 -

Trial Court Opinion, 3/15/22, at 13-16 (cleaned up).

The record supports the court's determination that Appellant participated in the interview voluntarily, and that he was not subject to a custodial interrogation. Therefore, the circumstances of the encounter did not necessitate **_Miranda_** warnings, and the court did not err in denying his motion to suppress his interview statements.

Overall, Appellant has not demonstrated that the trial court abused its discretion in denying his Rule 600 motion and admitting evidence of his interview statements, or that it erred in denying his motion to suppress. Thus, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/1/2025